**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

LEE YOUNG AND CHARLES J. MIKHAIL                                    PLAINTIFFS

VS.                                              CIVIL ACTION NO. 1:09-cv-669-KS-MTP

RICHARD F. SCRUGGS, INDIVIDUALLY;
SMBD, INC., DIRECTLY AND AS SUCCESSOR
IN INTEREST TO SCRUGGS, MILLETTE BOZEMAN,
AND DENT A/K/A SMBD, AND AS SUCCESSOR IN
INTEREST TO SCRUGGS LEGAL, P.A.; AND
DOE DEFENDANTS 1-20                                                  DEFENDANTS

**DEFENDANTS' MEMORANDUM BRIEF IN
SUPPORT OF THEIR MOTION TO DISMISS**

This case relates to Plaintiffs' demands for money from Defendants Richard F. Scruggs and

SMBD, Inc., their employer, under an attorney fee agreement signed in July 1999.  Plaintiffs seek

damages for Defendants' decision in July 2005 to charge Plaintiffs with responsibility for satisfying

a portion of a federal court judgment rendered against Defendants.  Plaintiffs also seek damages for

the residual effect of Defendants' payment of certain legal fees to a law firm which represented

Defendants in another litigated matter.  Plaintiffs pursue their quests for money under a variety of

legal theories, including RICO, breach of contract and breach of fiduciary duty.

This Court should dismiss some or all of Plaintiffs' claims.  First, Plaintiffs have failed to

sufficiently serve process on Richard Scruggs.  Second, Plaintiffs have failed to state a RICO claim

upon which relief can be granted.  With dismissal of the RICO claims, this Court should decline to

retain supplemental jurisdiction over the remaining state law claims.  Even if this Court does retain

jurisdiction, the applicable statute of limitations bars Plaintiffs' claims related to the July 2005

decision to allocate responsibility to Plaintiffs for satisfying a portion of the federal court judgment.

# FACTS[1]

Plaintiffs, who are both attorneys, worked for Scruggs, Millette, Bozeman and Dent, P.A, a law firm and predecessor to Defendant SMBD.  Plaintiffs were employees of and not shareholders in the firm.  As part of their compensation for services rendered in certain tobacco litigation, SMBD agreed to pay each Plaintiff five percent of the net attorney fees the firm received from the tobacco litigation.  *See* Ex. "A" to Complaint.  Their agreement calculated "net fees" after certain deductions from gross proceeds, including fees due to other associated attorneys and "any other obligations by [the] firm in connection with tobacco litigation other than obligations to firm shareholders."  *Id.* SMBD paid Plaintiffs through regular quarterly payments.

During and after the tobacco litigation, Defendants were involved in attorney fee disputes with Alwyn Luckey and William Roberts Wilson, both of whom claimed damages from fees earned in earlier asbestos litigation.  Luckey and Wilson also both sought a portion of Defendants' tobacco attorney fees under a constructive trust theory, *i.e.*, they should recover a portion of Defendants' tobacco attorney fees because (they claimed) Scruggs and SMBD used asbestos fees due them to finance the tobacco litigation.  *See* Compl., at ¶¶ 14 and 22.  Without dispute, attorney fees and expenses incurred in defense of these suits which sought recovery of Defendants' tobacco funds constituted "obligations by [the] firm in connection with tobacco litigation" properly deducted from the gross tobacco fees received by SMBD to calculate "net fees" due Plaintiffs.  *Id.*, at ¶ 14.

In July 2005, the United States District Court for the Northern District of Mississippi resolved the *Luckey* litigation by entering a $19.5 million judgment in favor of Luckey and against

---

[1]For purposes of this Motion to Dismiss, Defendants accept the well-pleaded allegations of Plaintiffs' Complaint.  However, to be clear, Defendants do not admit the factual averments and deny that Plaintiffs are entitled to any relief under any theory of recovery.

Defendants and other entities. *Id.*, at ¶ 15. To satisfy the judgment, SMBD obtained a loan and allocated responsibility for repaying that loan to various persons who received quarterly attorney fee payments from SMBD, including Plaintiffs. SMBD advised Plaintiffs in 2005 that it would deduct an equal amount ($31,155.00) from each payment for the next twenty quarters. *Id.*, at ¶ 16.

Richard Scruggs and SMBD retained Joey Langston, an attorney, as one of their legal counsel in the *Wilson* litigation. According to Plaintiffs, Langston used a portion of the attorney fees paid to him by SMBD in 2006 to compensate Ed Peters, another attorney, for improperly influencing Judge Bobby DeLaughter, the state circuit court judge presiding in the *Wilson* litigation. *Id.*, at ¶¶ 22 and 26. SMBD deducted the Langston attorney fees from the gross tobacco fees before calculating Plaintiffs' net quarterly payment. *Id.* at ¶ 27.

In September, Plaintiffs filed their Complaint seeking, among other things, compensatory and punitive damages for the 2005 *Luckey* allocation and for the attorney fees paid to the Langston Law Firm in 2006. This Court should dismiss Plaintiffs' claims in whole or in part for several reasons.

## I. Plaintiffs have failed to sufficiently serve Richard Scruggs with process.

The Clerk issued a summons for Richard Scruggs on September 9, 2009, the same day Plaintiffs filed their Complaint. [Doc. 3]. Plaintiffs previously purported to have effectuated service on Richard Scruggs:

> By mailing pursuant to Rule 4(g) of the Federal Rules of Civil Procedure and Rule 4(d)(3) of the Mississippi Rules of Civil Procedure to Richard F. Scruggs, FCI Ashland-Federal Correctional Institution, Reg. No. 12734-042, State Route 713, P.O. Box 6001, Ashland, KY 41105.

[Docs. 4, 5].

Plaintiffs apparently called the Clerk's office to assert that this service by regular mail was proper. [Unnumbered docket notation, Oct. 21, 1009]. However, neither the Federal Rules of Civil Procedure nor the Mississippi Rules of Civil Procedure provide for service by regular mail in this manner. Plaintiffs have failed to sufficiently serve process on Richard Scruggs as required by FED. R. CIV. P. 4(l)(1). Therefore, this Court should dismiss Plaintiffs' claims against Richard Scruggs under FED. R. CIV. P. 12(b)(5).

## II.    Plaintiff has failed to state RICO claims.[2]

This Court should grant a motion to dismiss for failure to state a claim under FED. R. CIV. P. 12(b)(6) when, accepting the factual allegations of a complaint as true, it is clear that the plaintiff can prove no set of facts that would entitle him to the requested relief. *See*, *e.g.*, *Cornish v. Correctional Services Corp.*, 402 F.3d 545, 548-49 (5th Cir. 2005); *Frank v. Delta Airlines Inc.*, 314 F.3d 195, 197 (5th Cir. 2002). To prove their civil RICO claim under 18 U.S.C. § 1962(c) and (d), Plaintiffs must show that they were injured because a person engaged in a pattern of racketeering activity connected to the acquisition, establishment, conduct or control of an enterprise. *See* WORD *of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996). Because Plaintiffs have failed to allege (i) that Defendants engaged in a pattern of racketeering activity, (ii) that Defendants acted in concert with a RICO "enterprise", or (iii) that they suffered an injury about which they can complain, this Court should dismiss Plaintiffs' RICO claims.

---

[2]Plaintiffs do not seek relief under RICO for Defendants' allocation of responsibility for satisfying the *Luckey* judgment and subsequent loan. Their RICO claims relate solely to funds paid to Langston Law Firm in the *Wilson* litigation.

       *1.*       *Plaintiffs have failed to allege pattern of racketeering activity.*

To have alleged that Defendants engaged in a pattern of racketeering activity, Plaintiffs must have adequately pleaded that Defendants committed two or more predicate criminal acts that (1) are related, and (2) amount to or pose a threat of continued criminal activity. *Word of Faith*, 90 F.3d at 122; *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 243 (5th Cir. 1988). Alleged predicate acts are related only if they share the "same or similar purposes, results, participants, victims, or methods of commission." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 2450 (1989).

The "continuity" prong of the pattern inquiry can be satisfied by either a showing of open-ended or closed-ended continuity. Open-ended continuity "can be shown by demonstrating either that the predicate acts establish a specific threat of repetition extending indefinitely into the future or that the predicates are a regular way of conducting the defendant's ongoing legitimate business." *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007). Plaintiffs have not alleged this type of indefinite threat of criminal activity.

Plaintiffs may demonstrate closed-ended continuity "by proving a series of related predicates extending over a substantial period of time. ***Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement***: Congress was concerned in RICO with long-term criminal conduct." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 242 (1989) (emphasis added). Because the predicate conduct alleged by Plaintiffs is related to acts taken within a discrete period of time with respect to a particular piece of litigation, any continuity that they might show would necessarily be closed-ended.

However, Plaintiffs' allegations do not state a claim of closed-ended RICO continuity. Even viewing the Complaint in the light most favorable to Plaintiffs, each act that is alleged to be part of a "pattern of racketeering activity" occurred during a brief period of time and was related only to the *Wilson* litigation. Exhibit "F" to the Complaint (which purports to illustrate "a list of all funds withheld from Plaintiffs and diverted for use in the Scruggs Enterprise's scheme to bribe elected officials") demonstrates that all of the predicate acts alleged by Plaintiffs occurred between October of 2006 and January of 2007. Plaintiffs do not allege any threat of "future criminal conduct" beyond this limited time frame.

The Fifth Circuit has repeatedly held that a pattern of racketeering activity is not shown where alleged RICO predicate acts are "***part and parcel of a single, otherwise lawful transaction***." *Abraham*, 480 F.3d at 355; *Word of Faith*, 90 F.3d at 123; *In re Burzynski*, 989 F.2d 733, 43 (5th Cir. 1993); *Delta Truck*, 855 F.2d at 244. In *Burzynski*, the plaintiff brought a RICO claim against an insurer, claiming that the insurer had committed multiple fraudulent acts during the course of a prior lawsuit, in which the plaintiff had intervened as an assignee of the original plaintiff's claims against the insurer after the original plaintiff's death. 989 F.3d at 737. The allegations of fraud in the RICO suit included serving improper subpoenas and discovery requests and filing improper *ex parte* motions. *Id*. at 737-38. In affirming the district court's dismissal of the plaintiff's civil RICO claims, the Fifth Circuit held that "[a]ll of the alleged predicate acts took place as part of the *Burzynski I* litigation, which has ended" and that the "otherwise lawful transaction" at issue was "the defense of a lawsuit - which is now over." *Id*. at 743. Similarly, in this case, the predicate acts from which Plaintiffs claim injury occurred as part of the *Wilson* litigation, a discrete and otherwise lawful transaction which is now over. *See also Montesano v. Seafirst Comm. Corp.*, 818 F.2d 423,

6

427 (5th Cir. 1987) ("A scheme to achieve a single discrete objective does not of itself create a threat of on-going activity, even when that goal is pursued by multiple illegal acts, because the scheme ends when the purpose is accomplished.") (internal quotes omitted).

This Court has previously addressed a similar issue in a RICO claim brought by Wilson and Luckey against Defendants and others for recovery of asbestos and tobacco attorney fees. In that case, Wilson and Luckey alleged that Defendant Scruggs had committed predicate acts in furtherance of a scheme to deprive them of attorney fees. *Wilson v. Scruggs*, No. 3:02CV25, slip op. at 16 (S.D. Miss. Sept. 29, 2003) (Appendix "1"). In granting the defendants' motion to dismiss for failure to state a claim, this Court found that the alleged predicate acts did not meet the "continuity" requirement because they were all alleged to be "pursuant to a single effort to effectuate a single wrong against no one other than" Wilson and Luckey. *Id*. at 18; *see also id*. at 19 (citing *Tarter v. Un. Wisc. Life Ins. Co.*, 2002 WL 1379168, at *7 (E.D. La. 2002) (finding no continuity when plaintiffs alleged that "each of the alleged 'mail fraud' and 'wire fraud' acts was perpetrated solely to allow the defendants to avoid paying the plaintiffs' claims under a single insurance contract."). Plaintiffs' allegations of racketeering activity are composed of nearly identical claims, as they allege that Defendants withheld "funds to which Plaintiffs are entitled and pays those funds to Langston in order to facilitate the bribery of elected officials *in order for Defendant Scruggs to obtain a favorable result in a lawsuit against him*." RICO Statement, at ¶ 7 (emphasis added).

Even taking all of Plaintiffs' alleged facts as true, Defendants committed the predicate acts for which Plaintiffs seek recovery during the course of the *Wilson* litigation, an otherwise lawful transaction which is now concluded. The specific "withholdings" identified by Plaintiffs occurred over a brief period of time and related to a discrete series of payments for legal services. Plaintiffs

7

have alleged that Defendants participated in a scheme to deprive them of attorney fees to which they claim they were entitled pursuant to the terms of a single contract. Because Plaintiffs have failed to plead that Defendants were engaged in the type of "long-term criminal conduct" that RICO was intended to reach, they have not alleged that Defendants' actions posed a threat of continued criminal activity. This Court should dismiss Plaintiffs' RICO claims.

### 2.    Plaintiffs have failed to allege RICO "enterprise".

RICO only provides a civil remedy for racketeering activity that is related to the conduct of the affairs of an "enterprise". An enterprise is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Plaintiffs have failed to allege that Defendants' acts related to the operation of such an "enterprise".

A so-called "association-in-fact" enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *U.S. v. Turkette*, 452 U.S. 576, 583 (1981). Such an enterprise "(1) must have an existence separate and apart from the pattern of racketeering, (2) must be an ongoing organization and (3) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure." *Delta Truck*, 855 F.2d at 243 (citing *Turkette*, 452 U.S. at 583); *Gray v. Upchurch*, No. 5:05cv210-KS-MTP, 2007 WL 2258906 (S.D. Miss., Aug 03, 2007). The United States Supreme Court has recently held that such an enterprise must "have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. U.S.*, 129 S. Ct. 2237, 2244 (2009); *see also Delta Truck*, 855 F.2d at 244 (holding that "the enterprise must not be one that briefly flourishes and fades").

8

A RICO association must also be "an entity separate and apart from the pattern of activity in which it engages." *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 441 (5th Cir.) (quoting *Turkette*, 452 U.S. at 583).  When the relationship between members of an alleged enterprise does not "exist[] for purposes other than simply to commit the predicate acts and reap the resultant rewards", this requirement is not met.  *In re McCann*, 268 Fed. Appx. 359, 366 (5th Cir. 2008).

Even assuming that Plaintiffs' Complaint sufficiently pleads a pattern of racketeering activity (which it does not), such activity alone does not violate RICO.  *See U.S. v. Erwin*, 793 F.2d 656, 671 (5th Cir. 1986).  Rather, there must be a nexus between the alleged acts and the enterprise.  *Id*.  For this nexus to exist, the alleged predicate acts must have been facilitated by the defendant's position in the enterprise and the predicate acts must have had some effect on the enterprise.  *U.S. v. Cauble*, 706 F.2d 1322, 1333 (5th Cir. 1983); *see also U.S. v. Phillips*, 664 F.2d 971, 1011 (5th Cir. 1981) (*superseded on other grounds by rule as stated by U.S. v. Huntress*, 956 F.2d 1309, 1314-15 (5th Cir. 1992)) ("RICO does not criminalize engaging in a pattern of racketeering activity standing alone; the gravamen of a RICO offense is the conduct of an enterprise through a pattern of racketeering activity."); *U.S. v. Martino*, 648 F.2d 367, 381 (5th Cir. 1981) (holding that "RICO proscribes the furthering of the enterprise, not the predicate acts"); *U.S. v. Rubin*, 559 F.2d 975, 990 (5th Cir. 1977) (assuming "some required relationship" between predicate acts and affairs of enterprise).

Plaintiffs allege that Defendants participated in an association-in-fact enterprise composed of Defendants, Joey Langston, Ed Peters and Bobby DeLaughter.  Compl., at ¶ 30; RICO Statement, at ¶ 6(B).  Where they are required by this Court's Standing Order on RICO Cases to "[s]tate

9

whether the Plaintiff is alleging that the pattern of racketeering activity and the enterprise are separate," Plaintiffs allege that:

> 7.    Plaintiffs allege that the pattern of racketeering and the enterprise are separate.
>
> Defendants associated for some lawful purposes as well as for the main purpose of committing unlawful acts which comprise the pattern of racketeering. *Defendants' association in the Scruggs Enterprise withholds funds to which Plaintiffs are entitled and pays those funds to Langston in order to facilitate the bribery of elected officials in order for Defendant Scruggs to obtain a favorable result in a lawsuit against him.* The activities of the Scruggs Enterprise, formed by the association of the Defendants, provide such withholding of funds from the Plaintiffs, diversion of such funds to Langston, and bribery of elected officials from such funds.

RICO Statement, at ¶ 7 (emphasis added).  In other words, Plaintiffs concede that the "Scruggs Enterprise" existed only to the extent that alleged predicate acts were committed for Richard Scruggs to obtain a favorable result in a discrete, otherwise lawful transaction.  These allegations fail to establish the RICO requirements of associational purpose, separateness and longevity.

Likewise, when required to "[d]escribe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity," Plaintiffs allege that:

> 8.    The activities of the Scruggs Enterprise are mainly to provide legal services and advice.
>
> *The Scruggs Enterprise provides these services in some legitimate claims and, in particular, the claims in which Plaintiffs served as associate attorneys for SMBD.* In the illegitimate cases, the Defendants purported to pay legal fees to Langston for his legal services but instead such fees were used to bribe Peters and DeLaughter *in order to obtain a favorable result* in a case in which Scruggs and SMBD were defendants.

RICO Statement, at ¶ 8 (emphases added).

The statement that the "Scruggs Enterprise" provided legal services and advice in "the claims in which Plaintiffs served as associate attorneys for SMBD" is belied by the Complaint's other allegations. Plaintiffs have not alleged that Langston, Peters or DeLaugter were involved in the tobacco litigation. Plaintiffs have alleged that DeLaughter was the sitting Circuit Court Judge in the *Wilson* matter and that Peters was engaged in an attempt to improperly influence DeLaughter. Compl., at ¶ 26. Plaintiffs have not alleged that Peters or DeLaughter had any other connection to the other members of the alleged enterprise. Plaintiffs do not allege that the "Scruggs Enterprise" was a legitimate law firm, that it had clients or that it was compensated for providing legal services to anyone, or that it had any existence other than as a series of predicate acts the sole purpose of which was to net Defendants a favorable result in the *Wilson* matter. Because Plaintiffs have failed to allege that the "Scruggs Enterprise" was a separate, ongoing, purposeful, continuing unit, they have failed to state a RICO claim against Defendants upon which relief may be granted. This Court should dismiss Plaintiffs' RICO claims.

### 3. *Plaintiffs lack standing to bring this claim.*

A RICO plaintiff only has standing to recover to the extent he alleges he has been damaged by the predicate acts constituting the pattern of racketeering activity. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). To satisfy this standing requirement, Plaintiffs must allege that they were "injured in [their] business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). The Fifth Circuit only considers plaintiffs to be injured "by reason of" an alleged RICO violation when "the predicate acts constitute (1) factual (but for) causation and (2) legal (proximate) causation of the alleged injury." *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 744 (5th Cir. 1989).

Plaintiffs' allegations of RICO damages are that certain attorney fees were "withheld from Plaintiffs and diverted for use in the Scruggs Enterprise's scheme to bribe elected officials." Compl., at ¶ 32. Plaintiffs' RICO Statement alleges that they were "injured by Defendants' wrongful conduct which caused [them] to lose hundreds of thousands of dollars in fees owed to [them]." RICO Statement, at ¶ 4(B).

Plaintiffs claim that Defendants engaged in the RICO predicate acts of mail fraud, wire fraud, bank fraud, and bribery in violation of 18 U.S.C. §§ 1341, 1343, 1344, and 666, respectively. Compl., at ¶ 32 and ¶ 37. Plaintiffs specifically suggest that they were the victims of mail and/or wire fraud because certain payments and payment statements transmitted to Plaintiffs by SMBD (and *accepted* by Plaintiffs) reflected payment amounts that Plaintiffs deemed insufficient. Compl., at ¶ 32(c), (d), (e)(iii) and ¶ 38. Plaintiffs make no allegations of injury occurring to them as the result of bank fraud or bribery.

The elements of mail fraud under 18 U.S.C. § 1341 are "(1) a scheme to defraud; (2) use of the mails to execute that scheme; and (3) the specific intent to defraud." *U.S. v. Lucas*, 516 F.3d 316, 339 (5th Cir. 2008) (quoting *U.S. v. Dotson*, 407 F.3d 387, 391-92 (5th Cir. 2005)). To constitute fraud under that statute, an act must involve a materially false statement, and such misrepresentation must have "a natural tendency to influence, or is capable of influencing, the decision of the decision-making body to which it was addressed." *U.S. v. Harms*, 442 F.3d 367, 373 (5th Cir. 2006). The offense of wire fraud under 18 U.S.C. § 1343 requires the same substantive elements, but relies upon the use of interstate wire facilities to establish federal jurisdiction. *Neder v. U.S.*, 527 U.S. 1, 20-21, 25 (1999).

Plaintiffs' allegations do not identify any fraudulent statements or representations sent to them by Defendants via mail or wire. Instead, Plaintiffs allege that they were damaged by the nonpayment of the amounts reflected in Exhibit "F" to the Complaint, by virtue of the fact that those amounts were not included in the payments Plaintiffs did receive and accept. There is no allegation that any payment or statement that actually *was* sent to Plaintiffs was inaccurate, much less fraudulent. Plaintiffs also fail to allege that the payments or statements tended to or were capable of influencing them in some way.

Plaintiffs are seeking civil recovery under RICO based on their allegation that some portion of the money paid to Langston for legal fees in the *Wilson* matter was not a legitimate tobacco-related expense of SMBD. Plaintiffs contend that Defendants should not have deducted those funds from the gross tobacco fees. These allegations do not satisfy Plaintiffs' burden to allege that they have suffered an injury as a result of any charged predicate acts. *See Ocean Energy II*, 868 F.2d at 744 (quoting *Sedima*, 472 U.S. at 497) (holding that "'compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern' and that 'recoverable damages . . . will flow from the commission of predicate acts'"). Plaintiffs have not alleged that, *but for* any of the alleged predicate acts, SMBD would not have otherwise incurred the same legal expenses which Plaintiffs contend caused them injury.

Plaintiffs attempt to turn a breach of contract claim ("You failed to pay me money that you owed me.") into predicate acts of mail or wire fraud ("You committed mail fraud because the amount you *did* pay me fraudulently implied that you didn't owe me anything else."). Plaintiffs' RICO Statement, which baldly claims that predicate acts were committed when "funds were wrongfully withheld from the Plaintiffs and instead paid to Joey Langston for the bribery of public

13

officials", further illustrates this problem. RICO Statement, at ¶ 5(C). In the end, Plaintiffs merely claim that Defendants failed to pay all the monies due them. Plaintiffs may have a contract remedy, but not a RICO remedy.

Notably, although Plaintiffs allege that they objected to the *amount* that was paid to Langston, they do not deny that Langston provided legal services in the *Wilson* matter or that attorney fees and expenses incurred in the defense of the *Wilson* matter were tobacco-related obligations. Compl., at ¶ 22. Simply put, Plaintiffs' indignant protestations ignore the fact that all legal services rendered in defense of tobacco settlement funds, no matter the manner in which those services were provided, inured to their benefit and they had a direct pecuniary interest in protecting those funds. At best, Plaintiffs allege that Defendants engaged in bad acts of which Plaintiffs were beneficiaries, but that, because Plaintiffs lacked knowledge of those alleged bad acts, they were injured by them. Because Plaintiffs have failed to allege that they were injured by any predicate act, they lack standing to maintain their RICO claims against Defendants. This Court should dismiss Plaintiffs' RICO claims.

### III.    This Court should decline to exercise jurisdiction over state law claims.

This Court's original federal subject matter jurisdiction over this matter is founded upon Plaintiffs' federal RICO claims. *See* 28 U.S.C. § 1331. This Court's jurisdiction over the rest of Plaintiffs' claims is based solely upon supplemental jurisdiction under 28 U.S.C. § 1367. If the Court dismisses Plaintiffs' federal law claims, this Court should also decline to exercise jurisdiction over and should instead dismiss Plaintiffs' state law claims against Defendants.

Section 1367(c) allows district courts to decline to exercise jurisdiction over supplemental claims when the courts dismiss claims over which they have original jurisdiction. While this

14

determination is discretionary, the Fifth Circuit's "general rule" is to decline jurisdiction when all federal claims are dismissed prior to trial.  *See Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.*, 554 F.3d 595, 601-02 (5th Cir. 2009); *Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999).  When all federal law claims are eliminated from a suit "at an early stage of the litigation, the District Court [has] a powerful reason to choose not to continue to exercise jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988); *see also id.* at 350 n.7 (holding that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine - judicial economy, convenience, fairness, and comity - will point toward declining to exercise jurisdiction over the remaining state-law claims").

Defendants have brought this motion at the earliest possible opportunity.  Plaintiffs have not yet served Richard Scruggs with process, the parties have not conducted any discovery and the Court's only investment in this case to date has been to consider and grant Defendants' motion for enlargement of time [Doc. 10].  If the Court retains jurisdiction over Plaintiffs' supplemental claims only, it will be left in the position of presiding over a matter between non-diverse parties that arises strictly under state law.

The Fifth Circuit has recognized that, as courts of limited jurisdiction, federal courts are "often not as well equipped for determinations of state law as are state courts." *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 588-89 (5th Cir. 1992).  Because "the framers of the Constitution did not contemplate that a federal trial court could assume jurisdiction over exclusively state-law claims in the absence of diversity jurisdiction", interests of federalism and comity weigh in favor of dismissal of Plaintiffs' remaining claims.  *Id.* at 589 n.9.  This Court should decline jurisdiction over Plaintiffs' remaining state law claims and dismiss them.

**IV.    Applicable statute of limitations bars Plaintiffs' *Luckey* judgment claims.**

On July 20, 2005, Magistrate Judge Jerry Davis issued his Memorandum Opinion and Judgment (Compl., at Ex. "B") in litigation pending between Alwyn Luckey and Richard Scruggs and others. *See* Compl., at ¶ 15. A few days later, Magistrate Judge Davis modified the damages award, as reflected in his Amended Judgment (July 26, 2005) (Compl., at Ex. "B").

Defendant SMBD obtained a bank loan to satisfy the judgment. SMBD then allocated the responsibility for re-paying the bank loan to various persons who received quarterly payments from the tobacco attorney fee settlement, including Plaintiffs. SMBD began withholding $31,155.00 from each of Plaintiffs' quarterly payments as a charge for their portion of the loan payment and advised Plaintiffs "that a similar amount would be withheld for the same purpose from each quarterly payment for five years." *See* Compl., at ¶ 16.

Plaintiffs "immediately protested" and demanded "that they not be charged for these sums inasmuch as the district court award was clearly for asbestos fees, and not tobacco-related." *Id.* at ¶ 17. In August 2005, Plaintiffs learned that Defendants disagreed about the nature of the district court award. Defendants advised Plaintiffs that SMBD would not refund the amounts withheld from the July 2005 quarterly payment and "would not exempt them from future deductions." *Id.* at 19.

Plaintiffs continued their protests about the allocation and deduction in October 2005. Defendants informed Plaintiffs that "short of filing legal action" there was nothing Plaintiffs could do to reverse the decision to allocate to Plaintiffs responsibility for a portion of the *Luckey* judgment and subsequent bank loan. *Id.* at 20. Defendants confirmed their position and the finality of the decision in a letter dated November 14, 2005 (Compl., at Ex. "C"). Specifically, Defendants advised Plaintiffs that the deduction from their quarterly payments for satisfaction of the *Luckey* judgment

16

would "remain the same " through the twentieth quarterly payment in 2010.  *See* Schedule (November 14, 2005) (Ex. "A" to Defendants' Motion to Dismiss.[3]

Based on these allegations, Plaintiffs claim that Defendants breached the fee agreement (Compl., at Ex. "A") to compensate Plaintiffs for their work in the tobacco litigation.  Plaintiffs' claims are barred by the applicable statute of limitations.

Statutes of limitations are intended to "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared."  *Order of Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 348-49 (1944) ("[E]ven if one has a just claim, . . . the right to be free of stale claims in time comes to prevail over the right to prosecute them.").  The applicable statute of limitations for Plaintiffs' claims related to allocation of responsibility for the *Luckey* judgment is three years.  MISS. CODE ANN. § 15-1-49; *see also Weathers v. Metropolitan Life Ins. Co.*, 14 So. 3d 688 at 691-92, ¶ 14 (Miss. 2009).  A claim accrues on "the date the facts occurred which enable the Plaintiffs to bring a cause of action."  *CitiFinancial Mortg. Co., Inc. v. Washington*, 967 So. 2d 16, 19 (Miss. 2007).  The statute of limitations begins to run when all the elements of a cause of action are present.  *Weathers*, 14 So. 3d 688, at 691-92, ¶ 14.  Specifically, for breach of contract, the claim accrues "at the time of breach regardless of when damages resulting from the breach occur. *First Trust Nat. Ass'n v. First Nat'l Bank of Commerce*, 220 F.3d 331, 334 (5th Cir. 2000).  The same rule applies to a tort claim (such as a claim for breach of fiduciary duty) which arises from the same source and the same incidents as the breach of contract claim.  *Id.* at 335-36.

---

[3]The November 14, 2005 letter (Compl., at Ex. "C") references this accounting as an enclosure.  Plaintiffs omitted the enclosure from the letter attached to the Complaint.

For example, in a matter where the plaintiffs complained about the terms of an installment loan agreement with a balloon payment, the statute of limitations on the plaintiffs' contract and tort claims commenced when the plaintiffs had notice of the terms of the contract and not as each payment came due. *Washington*, 967 So. 2d at 19. Similarly, the continued ill effects of a breach of duty based on a single distinct event do not cause new limitations periods to commence as those effects occur. Each separate act over a period of time of withholding monies allegedly due does not constitute a separate and independent breach or cause of action if the withholdings are merely damages deriving from a single earlier event. *See*, *e.g.*, *Brown Park Estates-Fairfield Development Co. v. U.S.*, 127 F.3d 1449, 1456-57 (Fed. Cir. 1997); *see also Oenga v. U.S.*, 83 Fed. Cl. 594, 615-16 (2008) ("series of deleterious effects" from single event does not give rise to independent damages creating new claims).

In the present case, Plaintiffs admit knowing unequivocally in July 2005 that Defendants had allocated to them responsibility for satisfying a portion of the *Luckey* judgment. Plaintiffs protested the allocation as a breach of the terms of their written agreement for payment of attorney fees from the tobacco litigation and demanded that Defendants cure the breach. Defendants refused and advised Plaintiffs that the only manner by which Plaintiffs could resolve the issue was litigation. Defendants then wrote Plaintiffs in November 2005, again advising of Defendants' analysis of the *Luckey* judgment and their interpretation of the written agreement. Defendants provided Plaintiffs with an accounting which reflected the continued deduction from Plaintiffs' next twenty quarterly payments to satisfying their portion of the *Luckey* judgment.

There was only one act of alleged breach - - - the decision to charge Plaintiffs with a portion of the *Luckey* judgment and the loan obtained to satisfy that judgment. This alleged breach occurred

in July 2005. Defendants clearly and plainly advised Plaintiffs by oral and written statements of the conflicting interpretation of the fee agreement and of the "continued ill effects" which would occur each quarter until 2010. Defendants confirmed their position each quarter when they deducted $31,155.00 from each of Plaintiffs' quarterly payments through 2006, 2007 and 2008.

The statute of limitations commenced running in July 2005 and certainly no later than November 2005. Under Mississippi law, November 2008 was the latest possible deadline for commencing Plaintiffs' claims related to allocation of responsibility for the *Luckey* judgment. Plaintiffs' claims stated in their Complaint in this action (filed on September 9, 2009) are time barred. This Court should dismiss Plaintiffs' claims related to the *Luckey* judgment.

## CONCLUSION

Plaintiffs seek remedies unavailable for the damages they have allegedly suffered and invoke this Court's jurisdiction to settle claims that arise solely under state law. Defendants request that the Court (i) dismiss the claims against Defendants Richard Scruggs for Plaintiffs' failure to sufficiently serve process, (ii) dismiss Plaintiffs' RICO claims for failure to state a claim, (iii) decline to exercise jurisdiction over Plaintiffs' remaining state law claims, and (iv) dismiss Plaintiffs' claims arising from the 2005 *Luckey* judgment as barred by the applicable statute of limitations.

THIS, the 21st day of December, 2009.

RICHARD F. SCRUGGS AND SMBD, INC.

   */s/ J. Cal Mayo, Jr.*
J. CAL MAYO, JR. (MB NO. 8492)
POPE S. MALLETTE (MB NO. 9836)
PAUL B. WATKINS (MB NO. 102348)
*Attorneys for Defendants*

19

OF COUNSEL:

MAYO MALLETTE PLLC
2094 Old Taylor Road
5 University Office Park
Post Office Box 1456
Oxford, Mississippi  38655
Telephone: (662) 236-0055

**CERTIFICATE OF SERVICE**

I, J. CAL MAYO, JR., one of the attorneys for Defendants Richard F. Scruggs and SMBD,

Inc., do certify that I have electronically filed the foregoing document with the Clerk of the Court

using the ECF system, who forwarded a copy of same to the following:

James R. Reeves, Jr.
Matthew G. Mestayer
Lumpkin, Reeves & Mestayer, PLLC
160 Main Street
P.O. Drawer 1388
Biloxi, Mississippi 39533
ATTORNEYS FOR PLAINTIFFS

THIS, the 21st day of December, 2009.

                                    */s/ J. Cal Mayo, Jr.*
                                    J. CAL MAYO, JR.