**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**HATTIESBURG DIVISION**

**LEE YOUNG and CHARLES MIKHAIL**                                                  **PLAINTIFFS**

**VS.**                                                **CIVIL ACTION NO. 1:09cv669-KS-MTP**

**RICHARD SCRUGGS, individually; SMDB, INC.,**
**Directly and as successor in interest to SCRUGGS,**
**MILLETTE BOZEMAN AND DENT a/k/a SMBD,**
**and as successor in interest to SCRUGGS LEGAL,**
**P.A.; and DOE DEFENDANTS 1-20**                                          **DEFENDANTS**

**PLAINTIFFS' OPPOSITION BRIEF TO**
**DEFENDANTS' MOTION TO DISMISS**

Plaintiffs Lee Young and Charles Mikhail file this Opposition Brief to the Defendants' Motion to Dismiss. The Motion to Dismiss is without merit and should be denied. In the alternative, should any allegations be found insufficient, Plaintiffs request leave to amend the Complaint.

**I.**

**INTRODUCTION**

Defendant Richard F. Scruggs was a highly successful trial lawyer who gained international fame and enormous wealth from settlements with large tobacco companies ("the tobacco litigation"). Plaintiffs Lee Young and Charles Mikhail were associates who worked for Scruggs and/or his law firm, Defendants SMDB, Inc., directly and as successor in interest to Scruggs, Millette, Bozeman & Dent, a/k/a SMDB, and as successor in interest to Scruggs Legal, P.A. (hereafter "SMDB"). Plaintiffs dedicated a large part of their legal career to assisting Defendants in obtaining the tobacco settlements.

On July 1, 1999, Plaintiffs entered into written agreements with Defendants which provided that for the Plaintiffs' services in the tobacco litigation, each Plaintiff would receive a percentage of Defendants' net tobacco fees after the deduction of tobacco-related expenses. (Complaint, Para. 13) Plaintiffs could have never predicted the events that would subsequently occur and deprive them of the funds to which they were entitled, specifically that Scruggs - a man they once admired and held in high esteem - would plead guilty to attempting to bribe not one but two judges.

The contract between Plaintiffs and Defendants provided for the deduction of tobacco-related expenses. From 1999 to July 2005, these expenses included payments for attorneys' fees and other expenses to defend against a lawsuit filed by Scruggs' former partner, Alwyn Luckey, to attempt to collect tobacco-related attorneys' fees Luckey claimed he was owed ("the *Luckey* lawsuit"). (Complaint, Para. 14) On July 20, 2005, the district court awarded Luckey $19.5 million and entered final judgment; however, the court rejected a "constructive trust" theory for tobacco fees and held that Luckey was not entitled to any fees from the tobacco litigation. (Complaint, Para. 15)

In order to satisfy the $19.5 million judgment to Luckey, Defendants obtained a bank loan. On July 25, 2005, Defendants began withholding $31,155 from each of the Plaintiffs' quarterly tobacco payments to pay back the bank loan. (Complaint, Para. 16) Plaintiffs were advised that Defendants felt that the award to Luckey *did* include tobacco fees and therefore would not refund the sums being withheld from Plaintiffs' compensation, nor would the Plaintiffs be exempt from future deductions. (Complaint, Para.19)

During this time, William Roberts Wilson, another former partner with Scruggs, also sued Defendants for non-payment of asbestos fees owed to him and again alleged that he

was also entitled to tobacco fees ("the *Wilson* lawsuit"). (Complaint, Para. 22) In 2006, Plaintiffs learned that Defendants had retained Joey Langston to assist in their defense against Wilson's claims. Plaintiffs contributed to payment of attorneys' fees and expenses to Langston of approximately $3 million. (Complaint, Para. 22) In January 2007, Defendants withheld $44,000 from each of the Plaintiffs' quarterly payments (in addition to $31,155 withholding for the *Luckey* lawsuit) as a "contribution" to a $1 million payment to Langston. Defendants then amortized the withholding of $44,000 and withheld that amount over four (4) quarters throughout 2007. (Complaint, Para. 24)

In November 2007, Scruggs was indicted for attempting to bribe a state court judge to gain an advantage in a lawsuit filed by another law firm for fees Scruggs failed to pay in relation to Hurricane Katrina insurance litigation. Scruggs originally maintained his innocence; however, in Spring 2008, Scruggs pled guilty of conspiracy to bribe a judge. (Complaint, Para. 25) While Plaintiffs were shocked at this admission, the worse was yet to come.

In 2008, Plaintiffs learned that Langston had confessed to federal prosecutors that he and Scruggs had conspired to influence the state court judge in the *Wilson* lawsuit, and that Scruggs had given Langston $1 million to give to a former district attorney to use to attempt to influence the judge. (Complaint, Para. 26) In December 2008, Scruggs entered a guilty plea. (Complaint, Para. 27) Attorneys' fees that were owed to Plaintiffs and to which Plaintiffs were entitled had therefore been diverted to Langston to carry out Defendants' felonious bribery of a state court judge.

Plaintiffs filed their Complaint against Defendants because they are entitled to the fees they earned and which Defendants are contractually obligated to pay them. In

3

addition, Plaintiffs are entitled to all damages available to them based on Defendants' RICO violations of taking the money that should have been paid to them and instead diverting it to Langston for the sole purpose of bribing a state court judge. Rather than address the merits of the Plaintiffs' allegations (as indeed there are no factual defenses available to Defendants), Defendants have instead filed this Motion to Dismiss. The Motion to Dismiss is without merit and should be denied, and Defendants should be ordered to answer the allegations of the Complaint.

## II.

## ARGUMENT

**A.    Standard of Review**

In reviewing the Defendants' Motion to Dismiss, this Court views all well-pleaded facts in the light most favorable to the Plaintiffs. Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007). The Court should dismiss only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations. Rubinstein v. Collins, 20 F.3d 160, 166 (5th Cir. 1994). The Court must accept as true all well-pleaded facts, and view them in the light most favorable to the non-moving party. Capital Parks, Inc. v. Southeastern Advertising and Sales, Inc., 30 F.3d 627, 629 (5th Cir. 1994).

**B.    Service of Process**

Defendants first argue that service of process on Scruggs (but not SMDB) was insufficient. This argument has no merit. Defendants represent to this Court that Scruggs was only served by regular mail and argues that this is insufficient service of process pursuant to Rule 4(l)(1) of the Federal Rules of Civil Procedure. Pursuant to Rule 4(e)(1),

service upon individuals within a judicial district of the United States shall be made "pursuant to the law of the state in which the district court is located, or in which service is effected... ." Plaintiffs were therefore required to look to the law of Mississippi or Kentucky, the state in which Scruggs is incarcerated. Plaintiffs thereafter completed service of process under *both* Mississippi and Kentucky law by service by certified mail. Attached as Exhibit "A" is proof of service by certified mail on Scruggs at FCI Ashland-Federal Correctional Institution, State Route 713, Ashland, Kentucky 41105.

Pursuant to Kentucky Rule of Civil Procedure 4.04(8), service upon a person who is a prisoner may be made by certified mail. When process is made by certified mail, service is complete upon delivery of the envelope. K.R.C.P. 4.01(1)(a). Pursuant to Mississippi Rule of Civil Procedure 4(c)(5), a summons may be served on a person outside this state by sending a copy of the summons and of the complaint to the person to be served by certified mail, return receipt requested. Service is deemed complete as of the date of delivery. M.R.C.P. 4( c)(5) Scruggs was therefore properly served with process under both Mississippi and Kentucky state law. The requirements of Rule 4 of the Federal Rules of Civil Procedure have, therefore, been met. Defendants' argument concerning service of process is without merit.

**C.    RICO Allegations**

Next, Defendants argue that Plaintiffs have failed to sufficiently state a claim under RICO. Defendants argue (1) there was no continuity necessary for a pattern of racketeering activity, (2) any predicate acts were not related to the conduct of a RICO

5

"enterprise," and (3) Plaintiffs have no standing to assert RICO claims. These arguments have no merit, and therefore the Motion to Dismiss should be denied.

### 1.  **Pattern of Racketeering Activity**

Defendants argues that Plaintiffs have failed to state a RICO claim because they have not sufficiently pled "continuity." Defendants argue that the predicate acts were all committed during the *Wilson* litigation, "an otherwise lawful transaction which is now concluded." Defendants also argue that the withholdings occurred over a "brief period of time" and were related to a "discrete series of payments for legal services." In addition, Defendants argue that there is no threat of continued criminal activity. Defendants' argument is the very argument that the Fifth Circuit soundly rejected in Abraham v. Singh, 480 F.3d 351 (5th Cir. 2007).

 In Abraham, the Fifth Circuit held that the district court *erred* by "turning the Supreme Court's explanation of the continuity prong into a stringent pleading requirement." Id. at 355-56. In reversing the district court and holding that the plaintiff had pled a RICO claim, the Fifth Circuit stated that "[a]t this early stage, a plaintiff's burden is not tied to the precise language that the Supreme Court used but to the Court's general explanation of the statute." Id. at 356. Contrary to the Court's holding in Abraham, Defendants ask this Court to narrow its inquiry into whether the allegations fit into precise language, such as "otherwise lawful transaction" and/or "brief period of time"; this argument, however, has been rejected by the Fifth Circuit.

After rejecting a stringent "continuity" pleading requirement in Abraham, the Fifth Circuit held that the plaintiffs had sufficiently pled a continuing pattern. The Court

observed that the defendants engaged in at least a two (2) year scheme involving repeated activities with multiple victims. Id. at 356. In addition, there was "no reason to suppose that this systematic victimization ... would not have continued indefinitely had the plaintiffs not filed this lawsuit." Id. The Court stated that it was "confident that the allegations satisfy the liberal pleading standard" and sufficiently alleged continuity of racketeering activity. Id.

Defendants' argument was also rejected by the United States Supreme Court. In H.J. Inc. v. Northwestern Bell Tele. Co., 492 U.S. 229, 241 (1989), the Supreme Court concluded that it is "difficult to formulate in the abstract any general test for continuity." Instead, whether the predicate acts establish a threat of continued racketeering activity depends on the specific facts of each case. Id. at 242. The "precise methods" by which continuity may be proved "cannot be fixed in advance with such clarity that it will always be apparent whether in a particular case a pattern of racketeering activity exits." Id. at 243. Clearly, however, a plaintiff alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Id.

The Plaintiffs have met the pleading requirements announced in Abraham. Plaintiffs have sufficiently pled that the RICO pattern existed over an extended period of time beginning in 2006 and continuing until at least 2008 when Langston confessed that he and Scruggs had conspired to bribe the judge in the *Wilson* case. (Complaint, Paras. 22-26) In addition, Defendants have never offered or attempted to reimburse Plaintiffs for the funds that they took from them to bribe the judge. (Complaint, Para. 27)

As in Abraham, there are multiple victims in this case. Defendants' acts clearly injured the Plaintiffs. The harm did not end there, however, and their pattern injured the

entire justice system and all attorneys in Mississippi, particularly trial attorneys. Just as in Abraham, there was also no reason to think Scruggs' pattern would stop but for the fact that he got caught. This is clear as Scruggs admitted to attempting to bribe yet another state court judge in another proceeding. (Complaint, Para. 25)

The additional cases cited by Defendants can easily be distinguished. In Word of Faith World Outreach Center v. Sawyer, 90 F.3d 118 (5th Cir. 1996), the plaintiff sued ABC after an investigative report by Diane Sawyer aired and reflected negatively on the plaintiff. The Court dismissed, finding that the alleged RICO predicate acts were "part and parcel of a single, otherwise lawful transaction." Defendants repeatedly use this phrase in defiance of Abraham and Northwestern. Contrary to Defendants' position, his admitted attempt to bribe a judge by funneling Plaintiffs' money to another attorney to use for the bribery is not "part and parcel of a single, otherwise lawful transaction."

In In re Burzynski, 989 F.2d 733 (5th Cir. 1993), a wife alleged her ex-husband had committed RICO violations. Although this case involved an ongoing lawsuit, it did not involve admitted attempts to bribe a judge with the plaintiff's money. Likewise, in Calcasieu Marine Nat'l Bank v. Grant, 943 F.2d 1453 (5th Cir. 1991), the court found that the predicate acts were "isolated instances" and were not connected acts. Such is not the case here.

Plaintiffs have sufficiently stated a claim for continuing pattern of racketeering activity.

### 2. RICO Enterprise

Next, Defendants argue that Plaintiffs have failed to allege that Defendants' predicate acts related to the operation of a RICO "enterprise." Plaintiffs allege Defendants participated in an association-in-fact enterprise composed of Defendants, Langston, Ed

Peters, and Bobby DeLaughter. The existence of an enterprise is an essential element of a RICO claim. Atkinson v. Anadarko Bank & Trust Co., 808 F.2d 438, 440 (5th Cir. 1987). An "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any group of individuals, associated in fact but not a legal entity. United States v. Cauble, 706 F.2d 1322, 1330 (5th Cir. 1983). There must be not only a pattern of racketeering but proof that it was conducted through an enterprise. Id.

To establish an "association in fact" enterprise, Plaintiffs must show evidence of an on-going organization, formal or informal, and evidence that the various associates function as a continuing unit. Id. The racketeering activity must further the affairs of the enterprise. United States v. Manzella, 782 F.2d 533, 538 (5th Cir. 1986). The United States Supreme Court recently addressed this factor in Boyle v. United States, 129 S. Ct. 2237 (2009). In this case, the Supreme Court held that an association-in-fact enterprise will have three features: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to pursue the enterprise's purpose. Addressing the "longevity" factor, the Supreme Court concluded that "nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence." Id. at 2245.

The Plaintiffs' allegations sufficiently allege an "association in fact" of the Scruggs Enterprise. Scruggs, Langston, Peters, and DeLaughter had a common purpose as members of the Scruggs Enterprise: to bribe or be bribed in order to ascertain a favorable result for Defendants in a lawsuit under the guise of providing legal services. There were clear relationships among those associated with the Enterprise: Scruggs gave the money to Langston to influence Peters and/or bribe DeLaughter, who then gave it to Peters to

influence and/or bribe DeLaughter.[1]  It is undisputed that this Enterprise existed long enough to permit these associates to purse the Enterprise's purpose, as the members have pled guilty to the conspiracy.  It is of no consequence that these former attorneys did not form a "legitimate law firm" or whether they had clients or were compensated for providing legal services, as argued by Defendants.  As the Supreme Court stated, "a group that does nothing but engage in extortion through old-fashioned, unsophisticated, and brutal means may fall squarely within the statute's reach."  Id. at 2246.

Defendants next argue that there is no "nexus" between the Scruggs Enterprise, the Defendants, and the pattern of racketeering activity as required by United States v. Cauble, 706 F.2d 1322, 1330 (5th Cir. 1983).  The Fifth Circuit has not, however, "formulated a test to determine whether the requisite nexus has been established" to prove a RICO violation.  Cauble, 706 F.2d at 1330.  Defendants fail to acknowledge that the "contours of a conspiracy may wholly overlap those of the enterprise.  In that case, the racketeering activity of a co-conspirator may well be sufficiently connected to the enterprise to violate RICO."  United States v. Erwin, 793 F.2d 656, 671 (5th Cir. 1986).

Three attorneys and a sitting judge conspired together over a lengthy period of time to feloniously obtain a favorable result for Defendants in a lawsuit.  The Defendants have pled guilty to much of this activity.  The Scruggs Enterprise represented that it provided legal services to Defendants in that lawsuit and took money owed to Plaintiffs to purportedly pay these "legal fees" to associates of the Scruggs Enterprise.  The Plaintiffs

---

[1] While Plaintiffs have sufficiently pled the association in fact, depositions and further discovery will reveal the true role of each of these players.

have sufficiently pled that this is an "enterprise" for RICO purposes and have sufficiently pled the necessary separate activities of the Scruggs Enterprise.

### 3. *Standing*

Defendants next argue that Plaintiffs do not have "standing" to assert the RICO claims. Persons who have been injured *by reason of* the Defendants' commission of predicate acts have standing to bring suit under Section 1964( c). Sedima SPRL v. Imrex Co., Inc., 473 U.S. 479, 496 (1985). The Fifth Circuit has specifically rejected a requirement for a "direct" injury but instead "a requirement that the nexus between the injury and a predicate act be 'direct' may, at least in some circumstances, be overly restrictive." Ocean Energy II, Inc. v. Alexander & Alexander, Inc., 868 F.2d 740, 744 (5th Cir. 1989). Instead, the Fifth Circuit has adopted a "traditional causation analysis" and a plaintiff will be considered injured "by reason of" a RICO violation if the predicate acts constitute (1) factual or "but for" causation and (2) legal or "proximate" causation for the alleged injury. Id.

Defendants' argument that Plaintiffs lack standing is wholly without merit. Defendants took money to which the Plaintiffs were legally entitled, diverted those funds to Langston under the pretense of "legal fees," and instead used Plaintiff's money to bribe a judge. "But for" Defendants' wrongful withholding of Plaintiffs' money and use of the money to instead bribe a judge, Plaintiffs would not have suffered injury. In addition, the diversion of Plaintiffs' money to bribe a judge was the proximate cause of Plaintiffs' injury.

Defendants' argument is that Plaintiffs were not injured because they have not alleged that any fraudulent statements or representations were sent to them by Defendants via mail or wire. Defendants' argument appears to be based upon the "direct" injury

analysis that has been soundly rejected by the Fifth Circuit. Defendants further argue that there is no allegation that "but for" the bribery of the judge, Defendants would not have otherwise incurred the same legal expenses to pay to Langston. This argument is nonsensical.[2] Scruggs and Langston have admitted that funds were paid to Langston from Defendants for the sole purpose of bribing the judge in the *Wilson* case.

While it has no bearing on the issue of standing, Plaintiffs are appalled by Defendants' comment that their "indignant protestations ignore the fact that all legal services rendered in defense of tobacco settlement funds, no matter the manner in which those services were provided, inured to their benefit and they had a direct pecuniary interest in protecting those funds." Plaintiffs vehemently deny that they received any "benefit" from Defendants' bribery of the judge in the *Wilson* case or any other case. While Plaintiffs have never objected to paying their part in the *legitimate* defense of tobacco fees, they have *never* sought to receive any benefit or protect any "pecuniary interest" through illegal means, and especially the bribery of judges.

Plaintiffs are also disgusted by Defendants' statement to the Court that they were "beneficiaries" of Defendants "bad acts" and therefore have no standing. This argument is not only legally unsound but is also morally and ethically repugnant. The "bad acts" were felonies of the most egregious nature. Plaintiffs were *not* "beneficiaries" but instead lost hundreds of thousands of dollars in Defendants' felonious activities.

Clearly Plaintiffs have standing to assert RICO violations against Defendants.

---

[2]As discussed below, Plaintiffs request leave to amend their Complaint should this Court find that any of the allegations are insufficient.

**D.    Leave to Amend**

Should this Court find that any of the Plaintiffs' allegations are legally insufficient to survive a Rule 12(b)(6) motion to dismiss, Plaintiffs request leave to file an Amended Complaint.  See Hernandez v. Ikon Office Solutions, Inc., 306 Fed. Appx. 180 (5th Cir. 2009) (at motion to dismiss stage, plaintiff should have been given chance to amend complaint).  Leave to amend shall be freely given when justice so requires.  See FRCP 15(a).  "Rule 15(a) severely restricts the judge's freedom, directing that leave to amend 'shall be freely given when justice so requires.'" Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 597 (5th Cir. 1981).  See also Foman v. Davis, 371 U.S. 178, 182 (1962) (leave to amend should not be denied without substantial reason such as undue delay, bad faith, or dilatory motive on part of movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to opposing party, or futility of amendment).  In this case, justice does require that leave to amend be granted.

**E.    Supplemental Jurisdiction**

Plaintiffs have sufficiently alleged RICO violations, and therefore there is no need to address the issue of supplemental jurisdiction over the state law claims.  Even if, however, this Court were to dismiss the Plaintiffs' RICO claim, *without* leave to amend, the Court should nevertheless retain supplemental jurisdiction over the Plaintiffs' state law claims.  While Defendants are correct that the general rule is that a federal court should decline to exercise jurisdiction over remaining state-law claims when all federal law claims are eliminated before trial, "this rule is neither mandatory nor absolute." Brookshire Bros. Holding, Inc. v. Dayco Products, Inc., 554 F.3d 595, 602 (5th Cir. 2009).  On numerous

13

occasions, the Fifth Circuit has held that a district court should *retain* jurisdiction over state law claims even if all federal claims are dismissed. See Batiste v. Island Records Inc., 179 F.3d 217, 227 (5th Cir. 1999); Newport Ltd. v. Sears, Roebuck and Co., 941 F.2d 302, 308 (5th Cir. 1991); Doddy v. Oxy USA, 101 F.3d 448, 456 (5th Cir. 1996).

In determining whether to retain jurisdiction over state law claims, the relevant factors are whether (1) the claims raise novel or complex issues of state law, (2) the claims substantially predominate over the claim over which the district court had original jurisdiction, (3) the district court has dismissed all claims over which it had original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367( c). The court can also consider common law factors of judicial economy, convenience, fairness, and comity. Brookshire Bros., 554 F.3d at 603. No single factor is dispositive in this analysis. Batiste, 179 F.3d at 227.

The state law claims against Defendants are not "novel or complex," which weighs heavily in favor of retaining jurisdiction in federal court. See Batiste, 179 F.3d at 227 ("The absence of any difficult state-law questions thus weighs heavily toward our conclusion that the district court abused its discretion in refusing to retain jurisdiction over the remaining claims"). In addition, factors of judicial economy, convenience, fairness, and comity weigh heavily in favor of this Court retaining jurisdiction even if it should dismiss the RICO claims.

Defendant Scruggs is incarcerated in a federal prison and has pled guilty to violations of federal law. Defendant Scruggs admits that on at least two (2) occasions, he attempted to bribe state court judges. The Plaintiffs have commenced litigation in federal court on good faith allegations of RICO violations. Even if these claims were to be

dismissed, judicial economy and comity weigh in favor of this Court retaining jurisdiction over the state law claims.

For these reasons, even if Plaintiffs' RICO claims should be dismissed by this Court, Plaintiffs request that this Court exercise its right to retain jurisdiction over the remaining state law claims.

**F.      Statute of Limitations Regarding *Luckey* Claims**

Next, Defendants argue that Plaintiffs' claims relating to the *Luckey* litigation are barred by the statute of limitations. Defendants base their argument on a November 14, 2005, letter that was sent to Plaintiffs and informed them that their money would continue to be used to pay the *Luckey* judgment. Defendants argue that Plaintiffs were therefore "injured" no later than November 14, 2005, and all claims filed after November 14, 2008, are barred. This simplistic argument ignores Mississippi law regarding continuous injury.

Defendants rely primarily on Citifinancial Mortgage Co., Inc. v. Washington, 967 So. 23d 16 (Miss. 2007). In this case, however, the Supreme Court simply stated that the cause of action for a contractual claim accrues on the "date of actual injury." Id. at 19. Washington is factually distinguishable, therefore, as there was one loan document that contained all of the payment terms, and all injury sprung from the terms of this contract. Unlike Washington, the actual contract between Plaintiffs and Defendants does not contain the offending terms. Instead, Defendants elected to violate the terms over and over and over again, each time causing a new injury to Plaintiffs.

A "continuing tort" is one inflicted over a period of time and involves a wrongful conduct that is repeated until desisted. Stevens v. Lake, 615 So. 2d 1177, 1183 (Miss.

1993). "A continuing tort sufficient to toll a statute of limitations is occasioned by continued unlawful acts, not by continual ill effects from an original violation." Id. Each and every time, therefore, that Defendants have issued a payment to Plaintiffs but have wrongfully withheld funds to allegedly pay the Luckey judgment, Defendants have committed an unlawful act. "Where there is a repeated injury, the continuing-tort doctrine applies and tolls the statute of limitations, which begins to run on the date of the last injury." McCorkle v. McCorkle, 811 So. 2d 258, 264 (Miss. Ct. App. 2001).

Defendants continue to this day to withhold funds from Plaintiffs to allegedly pay off the loan obtained to satisfy the Luckey judgment. A breach of the contract occurs each and every time that Plaintiffs are not paid the full amount to which they are entitled under the contract. For this reason, the statute of limitations does not bar Plaintiffs' Luckey claims.

### III.

### CONCLUSION

For these reasons, Plaintiffs respectfully request that the Motion to Dismiss be denied. In the alternative, should this Court find that any of the allegations in the Complaint are insufficiently pled, Plaintiffs request leave to amend the Complaint.

Respectfully submitted, this the 4th day of January, 2010.

> LEE YOUNG and CHARLES MIKHAIL,
> Plaintiffs
>
> BY: /s/ James R. Reeves, Jr.
>     JAMES R. REEVES, JR. (MSB #9519)
>     MATTHEW G. MESTAYER (MSB #9646)
>     Lumpkin, Reeves & Mestayer, PLLC
>     P. O. Drawer 1388
>     Biloxi, MS 39533
>     Telephone: 228/374-5151
>     Fax: 228/374-6630

## CERTIFICATE OF SERVICE

I, undersigned counsel, do hereby certify that I have this 4th day of January, 2010, electronically filed the foregoing with the Clerk of Court using the ECF system which sent notification of such filing to the following counsel of record:

    J. Cal Mayo, Jr.
    Pope S. Mallette
    Paul B. Watkins
    Mayo Mallette PLLC
    2094 Old Taylor Road
    5 University Office Park
    P. O. Box 1456
    Oxford, MS 38655
    cmayo@mayomallette.com
    pmallette@mayomallette.com
    pwatkins@mayomallette.com

                                                  /s/ James R. Reeves, Jr.