# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

LEE YOUNG AND CHARLES J. MIKHAIL                        PLAINTIFFS

VS.                                              CIVIL ACTION NO. 1:09-cv-669-KS-MTP

RICHARD F. SCRUGGS, INDIVIDUALLY;
SMBD, INC., DIRECTLY AND AS SUCCESSOR
IN INTEREST TO SCRUGGS, MILLETTE BOZEMAN,
AND DENT A/K/A SMBD, AND AS SUCCESSOR IN
INTEREST TO SCRUGGS LEGAL, P.A.; AND
DOE DEFENDANTS 1-20                                            DEFENDANTS

## DEFENDANTS' REBUTTAL BRIEF IN
## SUPPORT OF THEIR MOTION TO DISMISS

                                                         RICHARD F. SCRUGGS AND SMBD, INC.

                                                         J. CAL MAYO, JR. (MB NO. 8492)
                                                         POPE S. MALLETTE (MB NO. 9836)
                                                         PAUL B. WATKINS, JR. (MB NO. 102348)
                                                         *Attorneys for Defendants*

OF COUNSEL:

MAYO MALLETTE PLLC
2094 Old Taylor Road
5 University Office Park
Post Office Box 1456
Oxford, Mississippi 38655
Telephone: (662) 236-0055

I.       <u>Plaintiffs have failed to serve Richard Scruggs with process.</u>

A plaintiff must properly serve a defendant with process. FRCP 4(c)(1); *see also Carimi v. Royal Caribbean Cruise Lines, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992). Sufficient service is not a mere technicality; it is the manner by which a plaintiff assures that a defendant has received notice of an adverse claim. Proving that a defendant has actual notice of litigation does not qualify as service. *Way v. Mueller Brass Co.*, 840 F.2d 303, 306 (5th Cir. 1988), *cited in Winegarner v. Cinemark USA,* 2009 WL 3199509, *4 (N.D. Tex. October 5, 2009). Courts require service of process out of due process concerns. *Omni Capital International, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97 (1987), *cited in Nabulsi v. Nahyan*, 2009 WL 1658017, *4 (S.D. Tex. June 12, 2009).

A plaintiff bears the burden of proving satisfaction of the service of process requirements. *Carimi*, 959 F. 2d at 1346, *cited in Tate v. Waller*, 2007 WL 2688532, *4 (S.D. Miss. September 10, 2007). A plaintiff typically carries this burden by introducing the proof of service, which is *prima facie* evidence of sufficient service. *See O'Brien v. R.J. O'Brien & Associates, Inc.*, 998 F.2d 1394, 1398 (7th Cir.1993), *cited in Nabulsi*, 2009 WL 1658017, *4. A defendant must then identify a defect in service or otherwise present evidence to refute the proof of service. In any event, a plaintiff bears the burden of ultimately proving that it sufficiently served a defendant.

Plaintiffs contend that they properly served Richard Scruggs by complying with Mississippi and/or Kentucky law. Plaintiffs are wrong for two reasons. First, Plaintiffs have failed to satisfy the most fundamental requirement for establishing proof of service. Second, even if the certified mail receipt (attached to Plaintiffs' Opposition as Ex. "A") suffices for proof of service (which it does not), the service remains defective. Based on the relevant Mississippi and Kentucky procedure rules, Plaintiffs have failed to sufficiently serve Richard Scruggs with a summons and the Complaint. This Court should dismiss Plaintiffs' claims against Richard Scruggs pursuant to Rule 12(b)(5).

A plaintiff must make proof of service to the court by the server's affidavit. FRCP 4(l)(1). In this case, Plaintiffs obtained a summons for serving Richard Scruggs and later submitted a return of service (Dkt. Nos. 4 and 5) showing delivery by regular mail. While they initially suggested that such service sufficed (Dkt. Annot. 10/21/09), Plaintiffs no longer contend that this initial service satisfied Rule 4, as reflected by their obtaining a new summons for Richard Scruggs on November 12, 2009 (Dkt. No. 8) and by their arguments in their Opposition Brief (pp. 4-5).

Plaintiffs have never returned the second summons or provided the Court a proof of service. Thus, even in the face of Defendants' Rule 12(b)(5) Motion, Plaintiffs have not submitted the most basic proof necessary to establish *prima facie* evidence of satisfying the due process concerns protected by Rule 4. Instead, Plaintiffs submit a copy of a certified mail receipt addressed to "Richard F. Scruggs" (but certainly not bearing a signature which matches that name). Plaintiffs offer no evidence of the contents of the envelope or of Richard Scruggs signing for the package. A proof of service (completed under penalty of perjury) is *prima facie* evidence of service. Because Plaintiffs have failed to submit a proof of service or offer any evidence to support compliance with Rule 4, this Court should dismiss the claims against Richard Scruggs pursuant to Rule 12(b)(5).

Even if this Court construes the mail receipt as proof of service signed under oath, this "proof of service" is facially defective under Mississippi and Kentucky law. Rule 4(e)(1) permits a plaintiff to serve a defendant by following state law, and the rules of procedure for Mississippi and Kentucky permit certified mail service. However, Plaintiffs' certified mail receipt fails to satisfy the remaining requirements of Mississippi and Kentucky law for certified mail service.

Mississippi permits service by certified mail on a person outside the State. MRCP 4(c)(5). However, for a natural person, such as Richard Scruggs, Mississippi requires more than delivery by

2

basic certified mail. To insure actual receipt, Mississippi Rule 4(c)(5) requires the plaintiff to clearly identify the package as "restricted delivery". *See, e.g.*, *Noble v. Noble*, 502 So.2d 317, 320 (Miss. 1987) (holding "restricted delivery" necessary to obtain personal jurisdiction), *cited in Hamm v. Hall*, 693 So.2d 906, 909 (Miss. 1997). Mississippi demands strict compliance with its service of process rules. *Kolikas v. Kolikas*, 821 So.2d 874, 878 (Miss. App. 2002), *cited in Brown v. Bristol-Myers Squibb Co.*, 2002 WL 34213425, *3 (S.D. Miss. November 2, 2002).

Here, the certified mail receipt clearly reflects that Plaintiffs did not select, pay the extra fee for or otherwise deliver the package to Richard Scruggs by "restricted delivery". Perhaps this explains the strange signature on the receipt (which does not resemble in any manner the name "Richard Scruggs") and the failure to file the required proof of service under oath. Regardless, Plaintiffs have not sufficiently served process under Mississippi law as required by Rule 4(e)(1).

This Court faced a similar situation in *DeCarlo v. Bonus Stores, Inc.*, 413 F.Supp.2d 770 (S.D. Miss. 2006). The plaintiff attempted to serve a defendant in Florida by certified mail, and a person named "Gierson" signed for the package. This Court rejected the plaintiff's contention that this delivery satisfied Federal Rule 4(e)(1) and Mississippi Rule 4(c)(5):

> The problem with the plaintiff's . . . argument is that this rule does not provide for the leaving of the process with someone other than the purported defendant at that person's address. That is the reason for the requirement of restricted delivery. It alerts the Post Office personnel attempting delivery that the person to whom it is addressed must either sign for it or refuse it. The subsection of the rule does not allow service on a surrogate as other subsections do.

*Id.* at 773-74. Plaintiffs have not satisfied Federal Rule 4(e)(1) and Mississippi Rule 4(c)(5).

Kentucky permits service on a prisoner by certified mail. KRCP 4.04(8). Like Mississippi, Kentucky Rule 4.01(1)(a) requires that the certified envelope contain "instructions to the delivering

3

postal employee to deliver to the addressee only" to insure actual receipt. "A specific type of certified mail is required, the type in which not only a return receipt is requested but also where delivery to the addressee only is specified and the address and date where delivered is shown on the receipt." 6 Ky. Prac. R. Civ. Proc. Ann. Rule 4.01 (6th ed. 2009). Service by certified mail "is complete only upon delivery of the envelope." KRCP 4.01(1)(a); *see Fleishman v. Goodman*, 252 Ky. 535, 67 S.W.2d 691, 692 (1934) (summons delivered only when placed within person's reach and accepted), *cited in Douglas v. Univ. of Kentucky Hospital*, 2008 WL 2152209, *2-3 (Ky. May 23, 2008). If someone other than the addressee signs for the certified package, service is insufficient. *Mitchell v. Money*, 602 S.W.2d 687, 688-89 (Ky. 1980), *cited in Douglas*, 2008 WL 2152209, *3.

Plaintiffs have failed to provide any proof that they instructed the postal employee to deliver the envelope to the "addressee only". Just as with Mississippi law, Plaintiffs have failed to properly serve Richard Scruggs under Kentucky law in satisfaction of Federal Rule 4(e)(1) and Kentucky Rule 4.01(1)(a).[1] This Court should dismiss Plaintiffs' claims against Richard Scruggs.

II. This Court should dismiss Plaintiffs' RICO claims.

  a. *Plaintiffs have not pled "pattern of racketeering activity".*

Plaintiffs have failed to satisfy RICO's "pattern of activity" requirements for either of two reasons. First, Plaintiffs have not pled that the predicate acts occurred over a "substantial period of

---

[1] Mississippi and Kentucky are not alone in requiring delivery to the addressee for valid certified mail service. *See*, *e.g.*, *Huebner v. Rosen*, 81 Fed. Appx. 276, 278-79 (10th Cir. 2003) (no service under Kansas law when plaintiff failed to request restricted delivery); *Ramirez v. Consolidated HGM Corp.*, 124 S.W.3d 914, 916 (Tex. App. 2004) (service defective under Texas law when addressee did not sign return receipt); *Wilburn v. Keenan Companies, Inc.*, 768 S.W.2d 531, 531-32 (Ark. 1989) (service defective under Arkansas law when plaintiff failed to use restricted delivery procedure); *In re City of Choctaw*, 191 P.3d 629, 631-32 (Okla. Civ. App. 2008) (service invalid under Oklahoma law when delivery not restricted to addressee).

time". Second, Plaintiffs have not pled that the predicate acts related to more than a single, otherwise lawful transaction.

Plaintiffs concede that RICO's "pattern of racketeering activity" requires allegations that Defendants committed a series of predicate acts over a substantial period of time. Opp. Brf., at 7. Plaintiffs contend that they satisfy this threshold because they "have sufficiently pled that the RICO pattern existed over an extended period of time beginning in 2006 and continuing until at least 2008 when Joey Langston confessed that he and Scruggs had conspired to bribe the judge in the Wilson case." *Id*. Plaintiffs' own pleadings and papers contradict this illogical contention.

Plaintiffs argue that Defendants committed predicate criminal acts by withholding certain funds from Plaintiffs and instead paying them to Langston. Compl., at ¶ 32(d), Ex. "F"; RICO Statement, at § 5(A). According to Plaintiffs, Exhibit "F" to the Complaint contains "a list of all funds withheld from Plaintiffs and diverted for use in the Scruggs Enterprise's scheme to bribe elected officials." Compl., at 10. ***Plaintiffs only identify "predicate act" withholdings on two occasions in their pleadings and papers - - one in "October/November 2006" and one in "January 2007"***, *i.e.*, two predicate acts per Plaintiff during three to four months. Compl., at Ex. "F"; *see also* RICO Statement, Ex. "A" (same exhibit, purporting to show "the dates on which funds were wrongfully withheld from Plaintiffs" (RICO Statement, at § 5(B)(i))). Plaintiffs make no allegation which suggests Defendants will engage in similar predicate acts in the future. Because Plaintiffs' allegations set forth a series of "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct", they do not adequately state a pattern of racketeering activity. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 242 (1989); *see also Butler v. BancorpSouth Bank*,

2007 WL 3237927, *3 (S.D. Miss. October 31, 2007) (finding lack of sufficient continuity in RICO statement alleging eleven predicate acts over six months).

In their Response, Plaintiffs try to skirt this fatal defect by arguing that Langston's 2008 criminal confession establishes a "pattern of racketeering activity" extending from 2006 until his confession. However, Plaintiffs *have not pled* that Langston's 2008 confession constituted a RICO predicate act. Furthermore, even Plaintiffs made such an allegation, Langston's 2008 confession to earlier predicate acts fails to establish an independent predicate act. *See* 18 U.S.C. § 1961 (listing criminal acts constituting "racketeering activity").

Facing clear authority indicating that their pleadings and papers do not allege a pattern of racketeering activity, Plaintiffs misleadingly cite *Abraham v. Singh*, 480 F.3d 351 (5th Cir. 2007), for the premise that Defendants seek to impose an improper "stringent continuity pleading requirement". Opp. Brf., at 6. Specifically, Plaintiffs disagree with Defendants' observation that RICO predicate acts which are "part and parcel of a single, otherwise lawful transaction" cannot constitute a pattern of racketeering activity. Defs. Brf., at 6; *see*, *e.g.*, *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 123 (5th Cir. 1996); *In re Burzynski*, 989 F.2d 733, 43 (5th Cir. 1993). Plaintiffs suggest that the Court should not hold their allegations to certain "precise language" previously used by the Fifth Circuit and that the inherent abstract nature of the RICO statutes requires an analysis of the facts of each case. Opp. Brf., at 6-7.

While it is true that the *Abraham* Court emphasized the importance of a careful review of the allegations, nothing in that case abrogated prior Fifth Circuit (and Supreme Court) case law holding that *no pattern* of racketeering activity exists when the alleged acts all relate to a "single, otherwise lawful" transaction. To the contrary, *Abraham* specifically concluded that:

6

> Nevertheless, "[i]t is unnecessary to delve into the arcane concepts of a closed-end or open-ended continuity under RICO" in cases "where alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction," for in such cases, "a 'pattern of racketeering activity' has not been shown." *Word of Faith*, 90 F.3d at 123. For example, in *Word of Faith*, we held that a church had failed to satisfy the continuity requirement where the church alleged predicate acts involving the production of television news programs that were part of a single, lawful endeavor.

*Abraham*, 480 F.3d at 355. The Fifth Circuit reversed the district court in *Abraham* because the defendants' alleged victimization of Indian nationals did not arise from a "single illegal transaction". The *Abraham* defendants directed their predicate acts at numerous victims over an extended period of time. *Id*. at 356.

Here, in contrast, the alleged predicate acts are Defendants' withholding a portion of sums due Plaintiffs to cover amounts paid to Langston for obtaining a favorable result in a single lawsuit, a discrete and identifiable transaction which has ended. *See* RICO Statement, at §§ 5(F) and 6(B); Opp. Brf, at 9 ("purpose . . . of the Scruggs Enterprise . . . [was] to ascertain a favorable result . . . in a lawsuit . . ."). A short-term scheme with a single objective does not satisfy RICO's pleading requirements. *See Burzynski*, 989 F.2d at 43 (dismissing RICO claim where all alleged predicate acts related to defense of lawsuit); *see also Butler*, 2007 WL 3237927, *4-5 (holding continuity does not exist where plaintiff alleges scheme with single objective). Plaintiffs attempt to distinguish *Burzynski* from the facts of this case with a self-serving statement that *Bursynski* "did not involve admitted attempts to bribe a judge with the plaintiff's money." Opp. Brf., at 8. The alleged predicate acts in *Burzynski* included fraud on the court and intimidation of potential witnesses. *Id*. at 737-38. Nothing in *Burzynski* limits its holdings to specific types of litigation misconduct.

Plaintiffs also contend that their pleadings meet the continuity requirement due to a separate criminal matter involving Richard Scruggs. Opp. Brf., at 7-8. However, Plaintiffs have not pled that any acts (other than the withholding of discrete amounts during two quarterly payments) are part of the alleged pattern of racketeering activity. Second, Plaintiffs have no standing to rely upon a separate transaction to establish RICO continuity in this matter because they do not claim any involvement with or interest in the other transaction, which involved an attorney fee dispute over Hurricane Katrina litigation. Compl., at 7-8. Finally, Plaintiffs do not suggest that the "RICO enterprise" alleged to exist in this matter had any involvement in the other transaction.

> b.  *Plaintiffs have not alleged RICO "enterprise".*

Plaintiffs' arguments regarding the so-called "Scruggs Enterprise" conflate the allegation of a simple conspiracy and the allegation of a RICO enterprise. A conspiracy exists when two or more people conspire to commit an offense and one or more of those people takes an overt act toward the commission of that offense. *See* 18 U.S.C. § 371. A RICO enterprise, on the other hand, must exist for purposes other than to commit the conduct in which it is alleged to have engaged, and the relationships between the members of the enterprise must extend beyond commission of predicate acts and receipt of benefits. *See U.S. v. Turkette*, 452 U.S. 576, 583 (1981); *In re McCann*, 268 Fed. Appx. 359, 366 (5th Cir. 2008); *Atkinson v. Anadarko Bank and Trust Co.*, 808 F.2d 438, 441 (5th Cir. 1987); *and Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 427 (5th Cir.1987).

Plaintiffs allege that the Scruggs Enterprise existed to achieve a favorable result in a single lawsuit. Addressing the factors recently discussed by the Supreme Court in *Boyle v. U.S.*, 129 S. Ct. 2237 (2009) (requiring ongoing associational purpose, relationships and longevity), Plaintiffs admit that the sole "purpose" of the Scruggs Enterprise was "***to bribe or be bribed in order to ascertain***

8

*a favorable result for Defendants in a lawsuit under the guise of providing legal services*." Opp. Brf., at 9 (emphasis added); *see also* RICO Statement, at ¶ 7 (alleging that purpose of Scruggs Enterprise was for "Scruggs to obtain a favorable result in a lawsuit against him").

Plaintiffs also concede that the only relationships between the members of the Scruggs Enterprise were those necessary to consummate the alleged criminal acts: "Scruggs gave the money to Langston to influence Peters and/or bribe DeLaughter, who then gave it to Peters to influence and/or bribe DeLaughter." Opp. Brf., at 9-10. Finally, Plaintiffs argue that the Scruggs Enterprise functioned as a continuing unit only "long enough to permit these associates to pursue the Enterprise's purpose, as the members have pled guilty to the conspiracy." Opp. Brf., at 10.

Plaintiffs do not argue that the Scruggs Enterprise existed for any other purpose than to engage in a conspiracy to commit bribery (an offense, which, notably, Plaintiffs do not claim constituted a predicate act for which they are entitled to recover). Rather, they allege that the Scruggs Enterprise was actually a conspiracy to commit bribery.

Plaintiffs have also not alleged that Defendants' positions in the Scruggs Enterprise facilitated the alleged predicate acts or that the alleged predicate acts affected the Scruggs Enterprise. *See U.S. v. Cauble*, 706 F.2d 1322, 1333 (5th Cir. 1983). Plaintiffs do not suggest that the predicate acts they identify – discrete "withholdings" from their tobacco payments on two occasions between October 2006 and January 2007 – had any relationship to the alleged purpose or operations of the Scruggs Enterprise, or even that Langston, Peters, or DeLaughter knew of them. Under the most favorable reading of Plaintiffs' pleadings, Defendants, Langston, Peters and DeLaughter conspired to commit criminal acts (none of which are identified as RICO predicate acts), and, to reimburse Defendants for payments to Langston, Defendants withheld money otherwise due to Plaintiffs.

Plaintiffs also do not allege that Defendants' positions in the Scruggs Enterprise facilitated the withholdings. Defendant SMBD could have withheld funds from Plaintiffs whether or not such an enterprise existed, and the alleged bribery and other criminal actions could have taken place with or without the alleged predicate acts. The mailing of checks and statements reflecting those withholdings, to the extent that those acts could qualify as predicate acts, were normal activities of SMBD, which regularly distributed tobacco attorney fees to Plaintiffs and other interested attorneys and shareholders. *See Atkinson*, 808 F.2d at 441 (no enterprise existed when members were not associated in any manner apart from normal activities of defendant bank). Plaintiffs have not alleged that the Scruggs Enterprise had any hand in mailing tobacco checks and statements to them.

        c.      *Plaintiffs lack standing to bring their RICO claim.*

To state a claim for recovery under RICO, the Fifth Circuit requires plaintiffs to allege that predicate acts both *factually* and *legally* caused them to suffer damages. *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 744 (5th Cir. 1989). As Defendants previously noted, Plaintiffs have not alleged injury as a result of the operative predicate acts identified in the pleadings (wire fraud and mail fraud). Defs. Brf., at 12. In response, Plaintiffs suggest with no further explanation that this argument "appears to be based upon the 'direct' injury analysis that has been soundly rejected by the Fifth Circuit." Opp. Brf., at 11-12. This is incorrect; Plaintiffs have failed to allege *any* injury, direct or indirect, as a result of a RICO predicate act.

Plaintiffs assert that they have pled causation because they suffered injury as a result of "Defendants' wrongful withholding of Plaintiffs' money" and the "diversion of Plaintiffs' money to bribe a judge." Opp. Brf., at 11. However, Plaintiffs have made no attempt to identify how they have been injured by any act of mail fraud or wire fraud. "Wrongful withholding" and "diversion" are not

10

RICO predicate acts and cannot confer standing upon Plaintiffs to bring a RICO claim. RICO simply does not provide a cause of action for the recovery of funds Plaintiffs believe were wrongfully spent under their fee agreement with Defendants..

Accepting Plaintiffs' allegations as true, the alleged bribery acts in this case were taken in furtherance of Defendants' interest in the *Wilson* litigation. Though Plaintiffs take offense at the suggestion, Plaintiffs and Defendants plainly had a parallel interest in the outcome of the *Wilson* litigation – protecting their tobacco attorney fees. To be clear, Defendants have never suggested that Plaintiffs had knowledge of any criminal misconduct in the *Wilson* matter. However, Plaintiffs have alleged, on the one hand, that Defendants benefitted as a result of the outcome of the alleged bribery because they "received a favorable result" in the *Wilson* litigation, and, on the other hand, that they have been damaged as a result of the same conduct. Leaving aside for the moment the fact that Plaintiffs have not even claimed that the alleged bribery conduct constituted a RICO predicate act, these inconsistent positions demonstrate Plaintiffs' lack of injury and standing.

### III.   This Court should deny Plaintiffs' request to amend their Complaint.

Plaintiffs summarily request leave to amend their pleadings to state a RICO claim. Plaintiffs have not filed a motion for leave or stated the grounds for an amendment. *See U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) ("A bare request in an opposition to a motion to dismiss - without any indication of the particular grounds on which the amendment is sought, *cf*. FED. R. CIV. P. 7(b) - does not constitute a motion within the contemplation of Rule 15(a).") (citing *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993)).

11

Plaintiffs' RICO claims do not fail because of a technical misstep; they fail because the series of events alleged in the Complaint and the RICO Statement do not rise to the level of a RICO violation which entitles Plaintiffs to that statute's special remedies. There is no magic language Plaintiffs can add to their pleadings to create a RICO cause of action. Having attempted in their Opposition Brief to voice new theories for their RICO claims (in conflict with their Complaint and RICO Statement), Plaintiffs simply fail to plead a valid theory of recovery under RICO. *See St. Germain v. Howard*, 556 F.3d 261, 264 (5th Cir. 2009) (finding trial court did not abuse discretion in denying leave to amend when plaintiffs had already filed original complaint, RICO statement and response to Rule 12(b)(6) motion). As Plaintiffs have failed to show that an amendment is not futile, *see*, *e.g.*, *Yee v. Baldwin-Price*, 325 Fed. Appx. 375, 380 (5th Cir. 2009); *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003), this Court should not entertain their request to amend their pleadings.

IV.    This Court should decline jurisdiction over Plaintiffs' state law claims.

Plaintiffs admit that the general rule of this Circuit is to decline jurisdiction when all federal claims are dismissed before trial. However, they cite *Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.*, 554 F.3d 595 (5th Cir. 2009), for the premise that the "rule is neither mandatory nor absolute" and, by implication, should not be followed in this case. Though instructive, *Brookshire* does not support Plaintiffs' contention.

In *Brookshire,* the Fifth Circuit reversed a remand order of the district court primarily because of the substantial judicial resources already expended in that case. *Id.* at 598. The court explained that, under circumstances where a trial court remands a suit "after investing a significant amount of judicial resources in the litigation", the general rule suggesting remand of supplemental claims does not apply. *Id.* at 602-03. The Fifth Circuit also rejected the district court's conclusion that the case

involved complex issues of law, noting that the only legal issues appeared to be "routine choice of law or prescription analysis that would arise in any products liability case", and further noting that the district court had already addressed those issues in the case. *Id.* at 603. Finally, the court noted a "significant risk that Brookshire will attempt to re-litigate in state court rulings made against it by the district court." *Id.*

These factors are not present here. This litigation has just begun, this Court has not ruled on extensive issues of State law, and Defendants have not sought to re-litigate in State court issues that this Court previously decided. Further, though Plaintiffs conclusorily suggest that the State law claims against Defendants are not "novel or complex", this is not necessarily so. Defendants have already raised a statute of limitations question which, according to Plaintiffs, requires the Court to apply Mississippi law regarding accrual of a contractual claim according to the date of injury and/or continuing tort principles. More broadly, Plaintiffs' Complaint spends approximately five pages alleging federal claims (which require specificity in pleading), and approximately three times that number of pages on their sundry State law claims.

Plaintiffs conclude their plea for the Court to retain supplemental jurisdiction with an argument that "judicial economy and comity weigh in favor of this Court retaining jurisdiction over the state law claims." They cite no cases or facts to support the contention. In fact, no loss of judicial economy occurs if the court determines now that the federal claims lack merit, as the litigation is in its infancy. Further, if principles of comity have meaning, then the State law claims should be considered by the courts established for that purpose. Plaintiffs fail on every front to express arguments to avoid the Fifth Circuit's general rule that a district court should decline to address State

law claims once the court dismisses the federal claims supporting its jurisdiction. *See, e.g., Butler*, 2007 WL 3237927, * 5.

      V.     <u>Statute of limitations bars Plaintiffs' *Luckey* judgment claims.</u>

Resolution of the statute of limitations issue turns on the answer to this question: what did Plaintiffs know and when did they know it? Plaintiffs had full notice of the entirety of Defendants' actions related to payment of the *Luckey* judgment no later than November 2005, and their claims fully ripened at that time. Having waited more than three years to file their complaint, the applicable statute of limitations bars their claims.

Plaintiffs rely on the "continuing tort" theory, as discussed in *McCorkle v. McCorkle*, 811 So.2d 258 (Miss. App. 2001), to suggest that each quarterly deduction of money from SMBD's payments to Plaintiffs created a new cause of action. *McCorkle*, however, involved various independent wrongful acts, *e.g.*, repeated filing of commitment proceedings by a son against his father. *Id.* at 263-64. That personal injury case is easily distinguished from Plaintiffs' claims here, which arise from an alleged breach of their written agreement with SMBD (Compl., at Ex. "A"). In *McCorkle*, the father did not know at the time of the first commitment proceeding that the son would file a second proceeding, causing additional injury to the father. In contrast, Plaintiffs knew when they received the November 2005 letter (Compl., at Ex. "C", and Motion to Dismiss, at Ex. "A") that SMBD would withhold the same sum of money from their payments for twenty quarters.

The situation in this case is similar to that of a commercial loan transaction where a borrower later complains about the terms of the loan. Mississippi courts routinely look to the information available to the plaintiff to determine when the claim ripened and the statute commenced running. For example, in *CitiFinancial Mortgage Co. v. Washington*, 967 So.2d 16 (Miss. 2007), the plaintiffs

signed a loan agreement providing for monthly payments for the next 15 years with a balloon payment at the end and later complained about the terms of their loan. The Mississippi Supreme Court determined that the statute of limitations commenced on the date the plaintiffs knew the terms of their loan (which was the date they signed the loan papers and not a few years later when they learned that better loan terms existed), despite the fact that the plaintiffs' obligation to make monthly payments continued for 15 years. When determining the commencement of a statute of limitations under Mississippi law, courts consistently analyze the information available to the plaintiff about the defendant's actions and *not* the period of time over which the plaintiff feels the ill effects of the defendant's actions. *See, e.g., Oaks v. Sellers*, 953 So.2d 1077, 1080-83 (Miss. 2007) (statute commenced when insured had notice that carrier had denied coverage and not when court later imputed liability to insured); *Andrus v. Ellis*, 887 So.2d 175, 179-80 (Miss. 2004) (statute commenced when plaintiffs had notice of loan terms, including credit insurance premium payments); *Frye v. American General Finance, Inc.*, 307 F.Supp.2d 836, 841-42 (S.D. Miss. 2004) (same).

      Defendants did not engage in repeated tortious conduct against Plaintiffs. Instead, Defendants advised Plaintiffs of the manner in which Defendants interpreted their written agreement, the impact this interpretation would have on Plaintiffs as a result of the *Luckey* judgment and of the subsequent loan obtained to satisfy that judgment, and the precise amount that SMBD would withhold from Plaintiffs' quarterly payments for 20 quarters. Defendants even told Plaintiffs that litigation was necessary to resolve any disagreement about interpretation of the agreement. Plaintiffs had full knowledge of these facts - - which were the facts necessary to bring their claim - - no later than November 2005. Plaintiffs filed their Complaint in September 2009, more than three years later. The statute of limitations in Miss. Code § 15-1-49 bars Plaintiffs' *Luckey* judgment claims.

## CONCLUSION

This Court should dismiss the claims against Defendant Richard Scruggs. This Court should dismiss the RICO claims against Defendants with prejudice and deny Plaintiffs' request to amend their Complaint. This Court should decline to retain jurisdiction over Plaintiffs' state law claims. Alternatively, this Court should dismiss Plaintiffs' *Luckey* judgment claims with prejudice.

THIS, the 20th day of January, 2010.

> RICHARD F. SCRUGGS AND SMBD, INC.
>
>   /s/ J. Cal Mayo, Jr.
> J. CAL MAYO, JR. (MB NO. 8492)
> POPE S. MALLETTE (MB NO. 9836)
> PAUL B. WATKINS, JR. (MB NO. 102348)
> *Attorneys for Defendants*

OF COUNSEL:

MAYO MALLETTE PLLC
2094 Old Taylor Road
5 University Office Park
Post Office Box 1456
Oxford, Mississippi 38655
Telephone: (662) 236-0055
Facsimile: (662) 236-0055

## CERTIFICATE OF SERVICE

I, J. CAL MAYO, JR., one of the attorneys for Defendants Richard F. Scruggs and SMBD, Inc., do certify that I have electronically filed the foregoing document with the Clerk of the Court using the ECF system, who forwarded a copy of same to the following:

James R. Reeves, Jr.
Matthew G. Mestayer
Lumpkin, Reeves & Mestayer, PLLC
160 Main Street
P.O. Drawer 1388
Biloxi, Mississippi 39533
ATTORNEYS FOR PLAINTIFFS

THIS, the 20th day of January, 2010.

　　　　　　　　　　　　　　　　　　　　　　　/s/ J. Cal Mayo, Jr.
　　　　　　　　　　　　　　　　　　　　　　　J. CAL MAYO, JR.