# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**LEE YOUNG AND CHARLES J. MIKHAIL**                                                    **PLAINTIFFS**

**VERSUS**                                          **CIVIL ACTION NO. 1:09-cv-669KS-MTP**

**RICHARD F. SCRUGGS, INDIVIDUALLY;**
**SMBD, INC., DIRECTLY AND AS SUCCESSOR**
**IN INTEREST TO SCRUGGS, MILLETTE BOZEMAN,**
**AND DENT A/K/A SMBD, AND AS SUCCESSOR IN**
**INTEREST TO SCRUGGS LEGAL, P.A.; AND**
**DOE DEFENDANTS 1-20**                                          **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion to Dismiss **[#13]** and a Supplemental Motion to Dismiss **[#34]** filed on behalf of the defendants and on a variety of peripheral motions concerning service of process, **[#s 25, 27 & 29]**. The court, having reviewed the motions, the responses, the pleadings and exhibits on file, the authorities cited and being otherwise fully advised in the premises, finds that the motion to dismiss is well taken in part and should be granted as hereinafter stated and that the motions regarding service of process will be denied as moot. The court finds specifically as follows:

## FACTUAL BACKGROUND

Defendant Richard F. Scruggs was a highly successful trial lawyer who gained international fame from settlements with large tobacco companies. The plaintiffs, who are both attorneys, worked for Scruggs, Millette, Bozeman and Dent, P.A, ("SMBD") a

law firm and predecessor to defendant SMBD. The plaintiffs assert that they dedicated a large part of their legal career to assisting the defendants in obtaining the tobacco settlements.

On July 1, 1999, the plaintiffs entered into written agreements with the defendants which provided for the plaintiffs' services in the tobacco litigation. The plaintiffs were employees of and not shareholders in the firm. As part of their compensation for services rendered in certain tobacco litigation, SMBD agreed to pay each plaintiff five percent of the net attorney fees the firm received from the tobacco litigation. Their agreement calculated "net fees" after certain deductions from gross proceeds, including fees due to other associated attorneys and "any other obligations by [the] firm in connection with tobacco litigation other than obligations to firm shareholders." SMBD paid the plaintiffs through regular quarterly payments.

During and after the tobacco litigation, the defendants were involved in attorney fee disputes with Alwyn Luckey and William Roberts Wilson, both of whom claimed damages from fees earned in earlier asbestos litigation through association with the defendants. Luckey and Wilson also both sought a portion of the defendants' tobacco attorney fees under a constructive trust theory, *i.e.*, they should recover a portion of the defendants' tobacco attorney fees because (they claimed) Scruggs and SMBD used asbestos fees due them to finance the tobacco litigation. *See* Compl., at ¶¶ 14 and 22. The defendants argue that the attorney fees and expenses incurred in defense of these suits, which sought recovery of the defendants' tobacco funds, constituted "obligations by [the] firm in connection with tobacco litigation" properly deducted from the gross tobacco fees received by SMBD to calculate "net fees" due the plaintiffs. The plaintiffs,

of course, disagreed.

In July 2005, the United States District Court for the Northern District of Mississippi resolved the *Luckey* litigation by entering a $19.5 million judgment in favor of Luckey and against the defendants and other entities. To satisfy the judgment, SMBD obtained a bank loan and allocated responsibility for repaying that loan to various persons who received quarterly attorney fee payments from SMBD, including the plaintiffs. SMBD advised the plaintiffs in 2005 that it would deduct an equal amount ($31,155.00) from each payment for the next twenty quarters.

Richard Scruggs and SMBD retained Joey Langston, an attorney, as one of their legal counsel in the *Wilson* litigation. The plaintiffs contend that they contributed to payment of attorneys' fees and expenses to Langston of approximately $3 million. According to the plaintiffs, Langston used a portion of the attorney fees paid to him by SMBD in 2006 to compensate Ed Peters, another attorney, for improperly influencing Judge Bobby DeLaughter, the state circuit court judge presiding in the *Wilson* litigation. SMBD deducted the Langston attorney fees from the gross tobacco fees before calculating the plaintiffs' net quarterly payment.

In November of 2007, Scruggs was indicted for attempting to bribe a state court judge to gain an advantage in a lawsuit filed by another law firm for fees Scruggs failed to pay in relation to Hurricane Katrina insurance litigation. Scruggs originally maintained his innocence, however, he later pled guilty of conspiracy to bribe a judge.

In 2008, the plaintiffs assert that they learned that Langston had confessed to federal prosecutors that he and Scruggs had conspired to influence the state court judge in the *Wilson* lawsuit, and that Scruggs had given Langston $1 million to give to a

former district attorney (Ed Peters) to use to attempt to influence the judge (Bobby DeLaughter).  In December 2008, Scruggs entered a guilty plea.  The plaintiffs argue that attorneys' fees that were owed to them had therefore been diverted to Langston to carry out the defendants' bribery of a state court judge.

In September of 2009, the plaintiffs filed their Complaint seeking, among other things, compensatory and punitive damages for the 2005 *Luckey* allocation and for the attorney fees paid to the Langston Law Firm in 2006.  The plaintiffs allege that they are entitled to the fees they earned and which the defendants are contractually obligated to pay them.  In addition, the plaintiffs contend that they are entitled to all damages available to them based on the defendants' alleged RICO violations of taking the money that should have been paid to them and instead diverting it to Langston for the sole purpose of bribing a state court judge.  The alleged RICO violations are the basis of federal jurisdiction.  The bulk of the plaintiffs' claims are state law claims arising from the alleged breach of contract issues and related claims.  The defendants assert that this court should dismiss the plaintiffs' claims in whole or in part for several reasons, which will be discussed hereinafter.

## STANDARD OF REVIEW

The defendants have moved the court to dismiss this matter under Rule 12(b)(5) for insufficient service of process on defendant Richard Scruggs and under rule 12(b)(6) for failure of the plaintiffs to state a claim upon which relief can be granted.

**Service of Process Issues**

A Rule 12(b)(5) challenge is the proper vehicle to contest the mode of delivery or the lack of delivery of the summons and complaint. Rule 12(b)(5) is also the proper avenue to challenge when the wrong party is served with an otherwise proper Summons and Complaint.

The proper challenge to an alleged untimely service of process, however, is under Rule 4(m), which provides for the dismissal of the action as a method of sanctioning a plaintiff's failure to make service on the defendant within 120 days after filing the complaint with the court.[1] The parties have neither briefed nor argued the motion under Rule 4(m) nor addressed the issue under the "good cause" provisions of this rule. Nevertheless, even if the parties do not address the rule properly, the court may, of its own initiative, address the appropriateness of a dismissal under the rule, *sua sponte*. *See* Rule 4(m), Federal Rules of Civil Procedure.

The Fifth Circuit Court of Appeals has noted that "'good cause' requires 'at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice, and some showing of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified is normally required.'" *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304 (5th Cir.1985) (quoting 10 WRIGHT & MILLER FEDERAL PRACTICE AND PROCEDURE: Civil 3d § 1165 at page622). Further, courts generally require "that a plaintiff demonstrate that,

---

[1] If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. FRCP 4(m).

despite diligent attempts to effectuate service within the allotted time period, service could not be made due to exceptional circumstances beyond his control." *Naglieri v. Valley Stream Central High School District*, 2006 WL 1582144 *2 (E.D.N.Y. May 26, 2006) (citations omitted).

The plaintiffs carry the burden of proving good cause for their failure to effect timely service. *Gitz v. St. Tammany Parish Hospital*, 125 F.R.D. 138, 138 (E.D.La.1989). "Good cause exists 'only when some outside factor[,] such as reliance on faulty advice, rather than inadvertence or negligence, prevented service.' " *LePone-Dempsey v. Carroll County Comm'rs*, 476 F.3d 1277, 1281 (11th Cir. 2007) (quoting *Prisco v. Frank*, 929 F.2d 603, 604 (11th Cir.1991)).

The Fifth Circuit has held that a dismissal under Rule 4(m) is proper even if the limitations period has run, and does not deny plaintiffs access to the courts or deprive them of property without due process of law, since the rule for accomplishing service is easily understandable and is not unconstitutionally vague. *See Peters v. U.S.*, 9 F.3d 344 (5th Cir.1993). However, courts are authorized to waive the time limit even where good cause is not shown. Fed. R.Civ.P. 4(m) advisory committee's note; *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir.1996).

**<u>Failure to State a Claim</u>**

In ruling on a 12(b)(6) motion, the Court may not go outside the pleadings, specifically the complaint in this case. "The Rule 12(b)(6) motion . . . only tests whether the claim has been adequately stated in the complaint." 5A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 1356 at 298 (1990).

As the Fifth Circuit has stated, "We may not go outside the pleadings. We accept all well-pleaded facts as true and view them in the light most favorable to the Plaintiff. We cannot uphold the dismissal 'unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Colle v. Brazos County, Texas*, 981 F.2d 237, 243 (5th Cir. 1993)(internal footnotes and citations omitted). *See also, Cinel v. Connick*, 15 F.3rd 1338, 1341 (5th Cir. 1994).

While a complaint need not contain detailed factual allegations to survive a 12(b)(6) motion, the United States Supreme court has held that a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 540, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929, 940 (2007)(other citations omitted). Of course, if any matters outside the complaint are considered, the motion is converted to one for summary judgment. *See Murphy v. Inexco Oil Co.*, 611 F.2d 570, 573 (5th Cir. 1980).

## **ANALYSIS**

### **Service of Process Issues**

The first issue concerns the service of process as to defendant Scruggs, a federal inmate in Kentucky. There is no issue as to proper service as to the other defendant, SMBD. The plaintiffs made numerous attempts under both the Mississippi Rules and the Kentucky Rules to serve Scruggs. As of the date of completion of briefing of this motion, Scruggs has been properly served. This court has tremendous discretion in determining good cause in the attempts to serve process. After a

consideration of the arguments of counsel and consideration of the fact that Scruggs has now been served, the court concludes that the plaintiffs have demonstrated ample good cause for the delay of service as to this defendant. Therefore, the motions related to the dismissal of this action for the lack of service of process on Scruggs, are denied as moot. *See Thompson v. Brown*, *supra.*

**Failure to Allege RICO "Pattern of Racketeering Activity"**

The plaintiffs do not seek relief under RICO for the defendants' allocation of responsibility for satisfying the *Luckey* judgment and subsequent loan. Their RICO claims relate solely to funds paid to Langston Law Firm in the *Wilson* litigation. The Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. § 1962, provides, in part:

> (a) [i]t shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such a person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or proceeds of such income in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

To prove their civil RICO claim under 18 U.S.C. § 1962(c) and (d), the plaintiffs must show that they were injured because a person engaged in a pattern of racketeering activity connected to the acquisition, establishment, conduct or control of an enterprise. *See Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996). The defendants assert that because the plaintiffs have failed to allege (i) that the defendants engaged in a pattern of racketeering activity, (ii) that the

defendants acted in concert with a RICO "enterprise", or (iii) that they suffered an injury about which they can complain, this court should dismiss the plaintiffs' RICO claims.

To have alleged that the defendants engaged in a pattern of racketeering activity, the plaintiffs must have adequately pleaded that defendants committed two or more predicate criminal acts that (1) are related, and (2) amount to or pose a threat of continued criminal activity. *Word of Faith*, 90 F.3d at 122; *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 243 (5th Cir. 1988). Alleged predicate acts are related only if they share the "same or similar purposes, results, participants, victims, or methods of commission." *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 245, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).

The "continuity" prong of the pattern inquiry can be satisfied by either a showing of open-ended or closed-ended continuity. Open-ended continuity "can be shown by demonstrating either that the predicate acts establish a specific threat of repetition extending indefinitely into the future or that the predicates are a regular way of conducting the defendant's ongoing legitimate business." *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007). The plaintiffs have not alleged this type of indefinite threat of criminal activity.

A plaintiff may demonstrate closed-ended continuity "by proving a series of related predicate acts extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. at 242. The defendants argue that the predicate conduct alleged by the plaintiffs is related to acts

taken within a discrete period of time with respect to a particular piece of litigation, thus any continuity that they might show would necessarily be closed-ended. This court agrees.

However, the plaintiffs' allegations do not state a claim of closed-ended RICO continuity. Even viewing the Complaint in the light most favorable to the plaintiffs, as the court must do at this stage, each act that is alleged to be part of a "pattern of racketeering activity" occurred during a brief period of time and was related only to the *Wilson* litigation. Exhibit "F" to the Complaint (which purports to illustrate "a list of all funds withheld from Plaintiffs and diverted for use in the Scruggs Enterprise's scheme to bribe elected officials") demonstrates that all of the predicate acts alleged by the plaintiffs occurred between October of 2006 and January of 2007. The plaintiffs do not allege any threat of "future criminal conduct" beyond this limited time frame, and such is ultimately fatal to their RICO claims. The Fifth Circuit has repeatedly held that a pattern of racketeering activity is not shown where alleged RICO predicate acts are "part and parcel of a single, otherwise lawful transaction." *Abraham*, 480 F.3d at 355; *Word of Faith*, 90 F.3d at 123; *In re Burzynski*, 989 F.2d 733, 43 (5th Cir. 1993); *Delta Truck*, 855 F.2d at 244.

In *Burzynski*, the plaintiff brought a RICO claim against an insurer, claiming that the insurer had committed multiple fraudulent acts during the course of a prior lawsuit, in which the plaintiff had intervened as an assignee of the original plaintiff's claims against the insurer after the original plaintiff's death. 989 F.3d at 737. The allegations of fraud in the RICO suit included serving improper subpoenas and discovery requests and filing improper *ex parte* motions. *Id.* at 737-38.

In affirming the district court's dismissal of the plaintiff's civil RICO claims, the Fifth Circuit held that "[a]ll of the alleged predicate acts took place as part of the *Burzynski I* litigation, which has ended" and that the "otherwise lawful transaction" at issue was "the defense of a lawsuit - which is now over." *Id.* at 743. Similarly, in this case, the predicate acts from which the plaintiffs claim injury occurred as part of the *Wilson* litigation, a discrete and otherwise lawful transaction which is now over. *See also Montesano v. Seafirst Comm. Corp.*, 818 F.2d 423, 427 (5th Cir. 1987) ("A scheme to achieve a single discrete objective does not of itself create a threat of on-going activity, even when that goal is pursued by multiple illegal acts, because the scheme ends when the purpose is accomplished.")(internal quotes omitted).

This court has previously addressed a similar issue in a RICO claim brought by Wilson and Luckey against the defendants and others for recovery of asbestos and tobacco attorney fees. In that case, Wilson and Luckey alleged that defendant Scruggs had committed predicate acts in furtherance of a scheme to deprive them of attorney fees. *Wilson v. Scruggs*, No. 3:02cv25TSL, slip op. at 16 (S.D. Miss. Sept. 29, 2003). In granting the defendants' motion to dismiss for failure to state a claim, Judge Lee found that the alleged predicate acts did not meet the "continuity" requirement because they were all alleged to be "pursuant to a single effort to effectuate a single wrong against no one other than" Wilson and Luckey. *Id.* at 18; *see also id.* at 19 (citing *Tarter v. Un. Wisc. Life Ins. Co.*, 2002 WL 1379168, at *7 (E.D. La. 2002) (finding no continuity when plaintiffs alleged that "each of the alleged 'mail fraud' and 'wire fraud' acts was perpetrated solely to allow the defendants to avoid paying the plaintiffs' claims under a single insurance contract."). The plaintiffs' allegations of racketeering activity

are composed of nearly identical claims, as they allege that the defendants withheld "funds to which Plaintiffs are entitled and pays those funds to Langston in order to facilitate the bribery of elected officials in order for Defendant Scruggs to obtain a favorable result in a lawsuit against him." RICO Statement, at ¶ 7.

Further, even taking all of the plaintiffs' alleged facts as true, as the court must, the defendants committed the predicate acts for which the plaintiffs seek recovery during the course of the *Wilson* litigation, an otherwise lawful transaction which is now concluded. The specific "withholdings" identified by the plaintiffs occurred over a relatively brief period of time and related to a discrete series of payments for legal services. The plaintiffs have alleged that the defendants participated in a scheme to deprive them of attorney fees to which they claim they were entitled pursuant to the terms of a single contract. Because the plaintiffs have failed to plead that the defendants were engaged in the type of "long-term criminal conduct" that RICO was intended to reach, they have not alleged, and could not allege, that the defendants' actions posed a threat of continued criminal activity. The plaintiffs' RICO claims thus fail for this reason.

**Failure to Allege RICO "Enterprise"**

RICO only provides a civil remedy for racketeering activity that is related to the conduct of the affairs of an "enterprise". An enterprise is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The plaintiffs have

failed to allege that the defendants' acts related to the operation of such an "enterprise".

A so-called "association-in-fact" enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *U.S. v. Turkette*, 452 U.S. 576, 583, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1981). Such an enterprise "(1) must have an existence separate and apart from the pattern of racketeering, (2) must be an ongoing organization and (3) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure." *Delta Truck*, 855 F.2d at 243 (citing *Turkette*, 452 U.S. at 583); *Gray v. Upchurch*, No. 5:05-cv-210KS-MTP, 2007 WL 2258906 (S.D. Miss., Aug 03, 2007). Further, the United States Supreme Court has recently held that such an enterprise must "have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. U.S.*, 129 S. Ct. 2237, 2244 (2009); *see also Delta Truck,* 855 F.2d at 244 (holding that "the enterprise must not be one that briefly flourishes and fades").

A RICO association must also be "an entity separate and apart from the pattern of activity in which it engages." *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 441 (5th Cir.) (quoting *Turkette*, 452 U.S. at 583). When the relationship between members of an alleged enterprise does not "exist[] for purposes other than simply to commit the predicate acts and reap the resultant rewards", this requirement is not met. *In re McCann*, 268 Fed. Appx. 359, 366 (5th Cir. 2008).

Even assuming that the plaintiffs' Complaint sufficiently pleads a pattern of racketeering activity (which the court has found that it does not), such activity alone does not violate RICO. *See U.S. v. Erwin*, 793 F.2d 656, 671 (5th Cir. 1986). Rather,

there must be a nexus between the alleged acts and the enterprise. *Id.* For this nexus to exist, the alleged predicate acts must have been facilitated by the defendant's position in the enterprise and the predicate acts must have had some effect on the enterprise. *U.S. v. Cauble*, 706 F.2d 1322, 1333 (5th Cir. 1983); *see also U.S. v. Phillips*, 664 F.2d 971, 1011 (5th Cir. 1981) (superseded on other grounds by rule as stated by *U.S. v. Huntress*, 956 F.2d 1309, 1314-15 (5th Cir. 1992)) ("RICO does not criminalize engaging in a pattern of racketeering activity standing alone; the gravamen of a RICO offense is the conduct of an enterprise through a pattern of racketeering activity."); *U.S. v. Martino*, 648 F.2d 367, 381 (5th Cir. 1981) (holding that "RICO proscribes the furthering of the enterprise, not the predicate acts"); *U.S. v. Rubin*, 559 F.2d 975, 990 (5th Cir. 1977) (assuming "some required relationship" between predicate acts and affairs of enterprise).

The plaintiffs allege that the defendants participated in an association-in-fact enterprise composed of the defendants, Joey Langston, Ed Peters and Bobby DeLaughter. Compl., at ¶ 30; RICO Statement, at ¶ 6(B). This court's Standing Order on RICO Cases requires the plaintiffs to "[s]tate whether the Plaintiff is alleging that the pattern of racketeering activity and the enterprise are separate." In conformity with that order, the plaintiffs state:

> 7.   Plaintiffs allege that the pattern of racketeering and the enterprise are separate.
>
> Defendants associated for some lawful purposes as well as for the main purpose of committing unlawful acts which comprise the pattern of racketeering. Defendants' association in the Scruggs Enterprise withholds funds to which Plaintiffs are entitled and pays those funds to Langston in order to facilitate the bribery of elected officials in order for Defendant Scruggs to obtain a favorable result in a lawsuit against him. The activities

-14-

>of the Scruggs Enterprise, formed by the association of the Defendants,
>provide such withholding of funds from the Plaintiffs, diversion of such
>funds to Langston, and bribery of elected officials from such funds.

RICO Statement, at ¶ 7. By this statement, the plaintiffs concede that the "Scruggs Enterprise" existed only to the extent that alleged predicate acts were committed for Richard Scruggs to obtain a favorable result in a discrete, otherwise lawful transaction. These allegations fail to establish the RICO requirements of associational purpose, separateness and longevity.

Likewise, when required to "[d]escribe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity," the plaintiffs allege that:

>8. The activities of the Scruggs Enterprise are mainly to provide legal
>services and advice.
>
>The Scruggs Enterprise provides these services in some legitimate claims
>and, in particular, the claims in which Plaintiffs served as associate
>attorneys for SMBD. In the illegitimate cases, the Defendants purported to
>pay legal fees to Langston for his legal services but instead such fees
>were used to bribe Peters and DeLaughter in order to obtain a favorable
>result in a case in which Scruggs and SMBD were defendants.

RICO Statement, at ¶ 8.

The statement that the "Scruggs Enterprise" provided legal services and advice in "the claims in which Plaintiffs served as associate attorneys for SMBD" is belied by the Complaint's other allegations. The plaintiffs have not alleged that Langston, Peters or DeLaugter were involved in the tobacco litigation. The plaintiffs have alleged that DeLaughter was the sitting Circuit Court Judge in the *Wilson* matter and that Peters was engaged in an attempt to improperly influence DeLaughter. Compl., at ¶ 26.

The plaintiffs have not alleged that Peters or DeLaughter had any other

-15-

connection to the other members of the alleged enterprise.  The plaintiffs do not allege that the "Scruggs Enterprise" was a legitimate law firm, that it had clients or that it was compensated for providing legal services to anyone, or that it had any existence other than as a series of predicate acts the sole purpose of which was to net the defendants a favorable result in the Wilson matter.  Because the plaintiffs have failed to allege that the "Scruggs Enterprise" was a separate, ongoing, purposeful, continuing unit, they have failed to state a RICO claim against the defendants upon which relief may be granted. This shortcoming is also fatal to the plaintiffs' RICO claims.

**State Law Claims**

This court's original federal subject matter jurisdiction over this matter is founded upon the plaintiffs' federal RICO claims.  *See* 28 U.S.C. § 1331.  Jurisdiction over the rest of the plaintiffs' claims is based solely upon supplemental jurisdiction under 28 U.S.C. § 1367.  Supplemental jurisdiction under 28 U.S.C. § 1367 is a codification of the ancillary and pendent jurisdiction doctrines.  Section 1367(a) provides:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy. . .

If the court dismisses the federal claims, it then may properly decline jurisdiction over the state law claims under Subsection (c) of § 1367.  Section 1367(c) provides:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if --
>
> > (1) the claim raises a novel or complex issue of state law,

>(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
>(3) the district court has dismissed all claims over which it has original jurisdiction, or
>
>(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

The rationale for declining supplemental jurisdiction once the federal claims are dismissed derives from the doctrine it codified, *i.e.*, pendent jurisdiction. "It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218, 228 (1966). The exercise of pendent jurisdiction should be viewed consistent with considerations of judicial economy, convenience and fairness to the litigants. *See Laird v. Bd. of Trustees of Inst. of Higher Learning*, 721 F.2d 529 (5th Cir. 1983). However, where the "federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *Gibbs* 383 U.S. at 726. The Fifth Circuit generally follows this practice of declining jurisdiction when all federal claims are dismissed prior to trial. *See Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.*, 554 F.3d 595, 601-02 (5th Cir. 2009); *Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999).

The Fifth Circuit has recognized that, as courts of limited jurisdiction, federal courts are "often not as well equipped for determinations of state law as are state courts." *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 588-89 (5th Cir. 1992). Because "the framers of the Constitution did not contemplate that a federal trial court could assume jurisdiction over exclusively state-law claims in the absence of diversity jurisdiction", interests of federalism and comity weigh in favor of dismissal of

the plaintiffs' remaining claims.  *Id.* at 589, n.9.  This court concludes that it should decline jurisdiction over the plaintiffs' remaining state law claims and dismiss them without prejudice to refiling in state court.  That being said, the court finds it unnecessary to address the standing issues asserted regarding the alleged injuries to the plaintiffs or the statute of limitations issues as to *Luckey* claims.

**Leave to Amend Complaint**

The plaintiffs have summarily requested leave to amend their pleadings to state a RICO claim.  The plaintiffs have not filed a motion for leave or stated the grounds for an amendment.  *See U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) ("A bare request in an opposition to a motion to dismiss - without any indication of the particular grounds on which the amendment is sought, cf. FED. R. CIV. P. 7(b) - does not constitute a motion within the contemplation of Rule 15(a).") (citing *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993)).

Based on the court's conclusions asserted above, it would be futile to allow the plaintiffs' leave to amend to assert additional or clarify their RICO claims.  The plaintiffs' RICO claims do not fail because of a technical misstep; they fail because the series of events alleged in the Complaint and the RICO Statement do not rise to the level of a RICO violation which entitles the plaintiffs to that statute's special remedies.  The court has viewed the claims asserted in the light most favorable to the plaintiffs and the facts can't change.  Based on the factual scenario presented, viewed in the light most favorable to the plaintiffs, a RICO claim cannot be stated.

This is true even given that under Rule 15, Federal Rules of Civil Procedure, leave to amend is generally freely given in the absence of any apparent or declared reasons such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment. *See, Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).

However, such leave to amend a complaint is not automatic. *Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 994 (5th Cir. 2005). The Fifth Circuit, consistent with the U.S. Supreme Court's decisions, has instructed that the district courts may, in deciding whether to grant leave to amend, consider a variety of factors which include undue delay and futility of the amendment. *Id.* Most certainly, the rules pertaining to amending a complaint do not require courts to indulge in useless gestures. *Deloach v. Woodley*, 405 F.2d 496, 496-97 (5th Cir. 1968). "Clearly, if a complaint as amended is subject to dismissal, leave to amend need not be given." *Pan Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 546 (5th Cir. 1980). Leave to amend the Complaint would be futile in this case. *See also, Yee v. Baldwin-Price*, 325 Fed. Appx. 375, 380 (5th Cir. 2009); and *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003)

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion to Dismiss **[#13]** and the Supplemental Motion to Dismiss **[#34]** filed on behalf of the defendants is Granted to the extent that the plaintiffs' RICO claims are dismissed with prejudice, that the plaintiffs' state law claims are dismissed without prejudice and they are denied as to the service of process on defendant Richard Scruggs.

IT IS FURTHER ORDERED AND ADJUDGED that the motions relating to the

service of process issues, **[#s 25, 27 & 29]**, are denied as moot, along with any other pending motion in this matter.  A separate judgment will be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

    SO ORDERED AND ADJUDGED, this the 7th day of May, 2010.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE